# Illinois Official Reports

## Appellate Court

---

### *People v. White*, 2020 IL App (5th) 170345

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS WHITE, Defendant-Appellant. |
| District & No. | Fifth District<br>No. 5-17-0345 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | April 15, 2020<br><br>April 30, 2020<br>April 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 88-CF-776; the Hon. Neil T. Schroeder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, John M. McCarthy, and Susan M. Wilham, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Thomas D. Gibbons, State's Attorney, of Edwardsville (Patrick Delfino, Patrick D. Daly, and Sharon Shanahan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Cates and Wharton concurred in the judgment and opinion.

## OPINION

¶ 1 This case is before this court for the fifth time. The defendant, Douglas White, appeals from the Madison County circuit court's denial of his motion for leave to file a successive postconviction petition. For the following reasons, we affirm.

¶ 2                                 I. BACKGROUND
¶ 3                         A. Conviction and Direct Appeal

¶ 4 In 1988, the defendant was charged with two counts of first degree murder (Ill. Rev. Stat. 1987, ch. 38, ¶ 9-1(a)(1)) and one count of concealment of a homicidal death (*id.* ¶ 9-3.1(a)). He was accused of killing his grandmother, Adella Vallerius, and her friend, Carroll Pieper, and of concealing Pieper's death. In March 1989, the cause proceeded to trial by jury.

¶ 5 In this appeal, little needs to be said about the evidence adduced at trial. The jury found the defendant guilty on all three counts. The trial court later sentenced the defendant to natural life imprisonment for each of the two first degree murder[1] convictions and five years of imprisonment for the concealment of a homicidal death. This court affirmed the judgment of conviction in *People v. White*, 209 Ill. App. 3d 844 (1991) (*White I*). The opinion in that appeal includes a detailed summary of the evidence presented during the defendant's trial.

¶ 6         B. The Defendant's First Collateral Attack on the Judgment of Conviction

¶ 7 In July 2001, the defendant filed with the circuit clerk a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2000)). It was the defendant's first postconviction petition. In September 2001, the circuit court summarily dismissed the petition as frivolous and patently without merit. This court affirmed the judgment in *People v. White*, No. 5-01-0804 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 8         C. The Defendant's Second Collateral Attack on the Judgment of Conviction

¶ 9 In March 2002, nine months before this court affirmed the dismissal of the defendant's first postconviction petition, the defendant initiated a second collateral attack on the judgment of conviction. He filed a *pro se* pleading that combined a successive petition for postconviction relief with a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)). The defendant filed several subsequent amended combined petitions for postconviction relief and for relief from judgment, both *pro se* and

---

[1]The defendant was sentenced to two mandatory natural life terms of imprisonment under section 5-8-1(a)(1)(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-8-1(a)(1)(c) (now codified, as amended, as section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2016) (hereinafter the multiple-victims murder statute))).

through counsel. In April 2002, the circuit court entered a written order continuing the case, pending resolution of the appeal in No. 5-01-0804 (*i.e.*, the appeal from the summary dismissal of the defendant's first postconviction petition). Despite the order continuing the case, the State in May 2002 filed a motion to dismiss the postconviction aspect of the defendant's combined petition.

¶ 10 In December 2005, the defendant filed a *pro se* motion for leave to file a *pro se* supplemental combined petition for postconviction relief and for relief from judgment, which the circuit court granted even though the defendant was represented by a special public defender at that time. The defendant's supplemental combined petition presented eight claims. The specific allegations contained therein are not relevant for purposes of this appeal, and thus, we need not recite them here. In March 2007, the State filed an amended motion to dismiss the defendant's combined petition for postconviction relief and for relief from judgment, which the circuit court granted. The defendant appealed to this court, and the judgment was reversed and remanded. *People v. White*, No. 5-07-0359 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11 Upon remand to the circuit court, the defendant filed a *pro se* motion for leave to file a sixth *pro se* amended combined petition for postconviction relief and for relief from judgment under section 2-1401 (735 ILCS 5/2-1401 (West 2016)). The sixth amended combined petition raised 13 claims. The specific allegations presented in that petition were detailed by this court in *People v. White*, 2016 IL App (5th) 140002-U, ¶¶ 21-25 (*White IV*), and thus, we need not repeat them here. The State subsequently filed a motion to dismiss the defendant's sixth amended combined petition, asserting that leave to file a successive postconviction petition had not been granted, that the petition did not demonstrate that the judgment of conviction was void, and that the petition was untimely under section 2-1401 (735 ILCS 5/2-1401 (West 2016)). The court granted the motion to dismiss, finding that the defendant's sixth amended combined petition was untimely filed. This court affirmed the dismissal in *White IV*, 2016 IL App (5th) 140002-U.

¶ 12 D. The Defendant's Third Collateral Attack on the Judgment of Conviction

¶ 13 In August 2017, the defendant filed a *pro se* motion for leave to file a successive postconviction petition. He asserted that his mandatory natural life sentences violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him because he was "a 20 year old minor" when the murders occurred and the trial court was not allowed to consider his youth and rehabilitative potential. In alleging that he had cause for failing to bring the successive petition's claims in the previous petition, the defendant relied on two cases, *People v. Harris*, 2016 IL App (1st) 141744 (*Harris I*), and *People v. House*, 2015 IL App (1st) 110580, which he asserted had only recently extended scientific evidence on the adolescent brain development to 18- to 21-year-olds. He also alleged that prejudice resulted from failing to bring these claims earlier in that he had significant rehabilitative potential and had taken college courses in prison, worked full time, and donated his time to a prison mural project.

¶ 14 The defendant noted that his earlier petition showed nine "nonapplications" of mandatory natural life imprisonment for multiple murders, and he asserted that he had recently learned of

an additional "nonapplication." He also attached affidavits from individuals who had allegedly heard his brother brag about receiving a sentence reduction as part of his plea agreement.

¶ 15    On August 27, 2017, the circuit court denied the motion for leave, finding that the defendant "has failed to make a sufficient showing of either cause or prejudice." The defendant appeals.

¶ 16                                II. ANALYSIS

¶ 17    The Act provides a method for criminal defendants to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47. Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, the court has provided in its case law two bases upon which the bar against successive proceedings will be relaxed: (1) a showing of cause and prejudice or (2) a claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23. Here, the defendant alleges only cause and prejudice, which we discuss below.

¶ 18    When a defendant seeks to file a successive postconviction petition, he must first obtain leave of court. 725 ILCS 5/122-1(f) (West 2016). Leave of court may be granted only if defendant demonstrates "cause" for his failure to bring the claim in his initial postconviction proceeding and "prejudice" resulting therefrom. See *id.* (codifying the cause-and-prejudice test articulated in *People v. Pitsonbarger*, 205 Ill. 2d 444, 458-60 (2002)); *Wrice*, 2012 IL 111860, ¶ 48. A defendant shows cause by identifying an objective factor that impeded his ability to raise a specific claim in his initial postconviction petition. 725 ILCS 5/122-1(f) (West 2016); *Wrice*, 2012 IL 111860, ¶ 48. A defendant shows prejudice by demonstrating that the claim not raised in his initial postconviction petition so infected his trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48. It is defendant's burden to establish a *prima facie* showing of cause and prejudice in order to be granted leave before further proceedings on his claims can follow (*People v. Bailey*, 2017 IL 121450, ¶ 24; *People v. Smith*, 2014 IL 115946, ¶ 30), and both elements must be satisfied for defendant to prevail (*People v. Guerrero*, 2012 IL 112020, ¶ 15). For the reasons that follow, the defendant cannot establish prejudice, since his claims are not legally cognizable.

¶ 19    We reject the defendant's contention for several reasons. First, the mere fact that the defendant was age 20 when he brutally murdered his grandmother and her friend and attempted to conceal his involvement in the crimes is not reason enough to consider him "youthful" such that a mandatory life sentence would be so disproportionate as to be cruel and unusual under the eighth amendment. To determine the demarcation between an adult and juvenile following *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, we turn to our legislature. See *People v. Buffer*, 2019 IL 122327, ¶ 34 (the clearest and most reliable objective evidence of a jurisdiction's contemporary values is legislation enacted by its legislature). As our supreme court noted in *Buffer*, since the *Miller* line of cases was issued, our legislature passed a new sentencing statute in 2016 for defendants under age 18 when they committed their offenses. See *Buffer*, 2019 IL 122327, ¶ 36; 730 ILCS 5/5-4.5-105 (West 2018). The statute requires the sentencing court to consider, in mitigation, factors relating to a defendant's youth to determine the appropriate sentence and enfolds the *Miller* factors on youth. *Buffer*, 2019 IL 122327, ¶ 36; 730 ILCS 5/5-4.5-105 (West 2018). Notably, the statute does not apply

- 4 -

to individuals age 18 and older; rather, those individuals are considered adults under the statute. See 730 ILCS 5/5-4.5-105 (West 2018). Thus, according to current sentencing laws, the defendant at age 20 was an adult when he committed his crimes.

¶ 20 Second, it follows that the *Miller* protections under the eighth amendment are simply not implicated in cases of adult offenders. *People v. Harris*, 2018 IL 121932, ¶ 61 (*Harris II*) (rejecting defendant's facial challenge under the eighth amendment); *People v. Herring*, 2018 IL App (1st) 152067, ¶ 103 (noting that defendant was an adult for sentencing purposes and rejecting "any challenge" on eighth amendment grounds); *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 31 (rejecting defendant's as-applied challenge under the eighth amendment); see also *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 44 (finding *Miller* unmistakably drew a bright line at age 18). Therefore, the defendant cannot benefit from the specific considerations that attend youth at sentencing. Moreover, with respect to his "as-applied" constitutional challenge under the eighth amendment, the allegations presented in the defendant's postconviction petition and appellate brief fail to demonstrate that the particular facts and circumstances of his case made him more akin to a juvenile subject to *Miller* protections, and less like an adult, or that his mandatory life sentence for a double murder of two individuals is cruel and unusual. See *People v. Thompson*, 2015 IL 118151, ¶ 37 (an as-applied constitutional challenge is by definition dependent on the particular facts and circumstances of an individual defendant).

¶ 21 Third, by now it is well established that even in light of *Miller*, "the mandatory sentence of life without parole for defendants who commit multiple murders, as provided in section 5-8-1(a)(1)(c), can be validly applied to adults," making the statute facially valid. *People v. Davis*, 2014 IL 115595, ¶¶ 30, 43. For all these reasons, the defendant's eighth amendment challenge fails.

¶ 22 The defendant next contends that his mandatory life sentence violates the proportionate penalties clause of the Illinois Constitution, which requires that all penalties be determined based on the "seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. He argues that his sentence is so disproportionate to the crime that it shocks the moral sense of the community in light of his youthfulness at age 20, his culpability and "the ill-considered circumstances of his offense," and his "demonstrated rehabilitative potential." See *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (hereinafter *Leon Miller*) (a statute may violate the proportionate penalties clause if the criminal punishment is degrading, cruel, or so wholly disproportionate to the offense that it shocks the moral sense of the community).

¶ 23 As with his eighth amendment challenge, the defendant argues that recent social science research demonstrates that the trial court should have been permitted to consider his age and its attendant characteristics prior to imposing the mandatory life sentence. The defendant relies on *Harris I*, 2016 IL App (1st) 141744, and *House*, 2015 IL App (1st) 110580, in arguing that his petition must advance. However, since the filing of the defendant's present petition for leave to file a successive postconviction petition, the supreme court issued its opinion in *Harris II*, 2018 IL 121932, ¶¶ 35-48, which overturned both of the cases relied on by the defendant. *Harris II* was a direct appeal case wherein the supreme court held that the record was insufficiently developed to address defendant's contention that *Miller* applied in the context of his proportionate penalties claim. Defendant argued that his 76-year sentence shocked the moral sense of the community, given the facts of his case, his youth, and other mitigating

circumstances. The supreme court declined to consider the matter, noting that there was no evidentiary hearing or factual development to support it in the trial court. However, *Harris II* noted that defendant was not foreclosed from raising the claim and that it "could *** potentially be raised" in a postconviction petition. *Id.* ¶ 48.

¶ 24 Here, the defendant argues that we need not address his claim on the merits but, instead, should allow him the opportunity to develop his claim, with the assistance of appointed counsel, as to whether *Miller* can apply to a 20-year-old for proportionate penalties purposes. *Harris II*, however, made no mention of exactly what is necessary to overcome the high bar for leave to file a successive postconviction petition, and we find that a flat allegation as to evolving science on juvenile maturity and brain development is simply insufficient. See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010) (a defendant seeking leave to institute a successive postconviction "must submit enough in the way of documentation to allow a circuit court to" determine whether leave should be granted). Other than generally asserting studies that show that sometimes youthfulness can extend into a person's twenties, the defendant does not now allege how he was particularly affected by any immaturity, and it is undisputed that he did not suffer from any cognitive or developmental impairments. Further, the allegations relating to his family history do not rise to the level of special circumstances that would provide a compelling reason to advance his successive postconviction petition. See *Smith*, 2014 IL 115946, ¶ 35.

¶ 25 In addition, contrary to the defendant's contention otherwise, his degree of culpability and adult age do not justify advancing his petition. The defendant relies on the seminal case, *Leon Miller*, wherein our supreme court held defendant's mandatory sentence for murder was constitutionally disproportionate as applied. There, defendant, who had been charged with two counts of murder via accountability and transferred to adult criminal court, was 15 years old when his friends committed a double murder. He had "one minute to contemplate his decision to participate in the incident," where he "stood as a lookout during the shooting, but never handled a gun." *Leon Miller*, 202 Ill. 2d at 341. Defendant was ultimately sentenced to a mandatory life term under the multiple-victims murder statute. The supreme court found that the convergence of the transfer, accountability, and multiple-victims murder statute, combined with the fact that the juvenile defendant was "the least culpable offender imaginable," rendered his sentence unconstitutional. *Id.* The court declared that a mandatory life sentence in that instance "grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community." *Id.* The court further noted that its decision was consistent with the longstanding distinction between juvenile and adult offenders, while observing that the multiple-victims murder statute had been upheld with respect to both juvenile principals and adult accomplices. *Id.*

¶ 26 The defendant now likens his case to *Leon Miller*. His case, however, is distinguishable in many important respects. As discussed, the defendant was an adult. In the past, Illinois courts have held that *Leon Miller* is inapplicable to young adults. The appellate court in *People v. Winters* rejected defendant's as-applied proportionate penalties challenge as to the murder he committed at age 18. See *People v. Winters*, 349 Ill. App. 3d 747, 750-51 (2004). *Winters* further noted that the multiple-victims murder statute had withstood constitutional challenges by adult defendants, even where they were convicted under an accountability theory. *Id.* The *Winters* court found that, under the statute, "an adult defendant's degree of participation is irrelevant whether that defendant is the actual perpetrator or an accomplice." *Id.* at 751.

¶ 27    One of the cases relied on by the defendant—*House*, 2019 IL App (1st) 110580-B, ¶¶ 46, 64—held, in contrast to *Winters*, that defendant's conviction for murder by accountability and mandatory sentence under the multiple-victims murder statute violated the proportionate penalties clause, where defendant was age 19 during the offense, minimally culpable since he acted as a lookout, and had no prior violent criminal history. *House* noted that it was appropriate to consider the degree of participation even for adult offenders, while observing that the codefendant there, who was age 17 with a similar level of culpability, had already been released from prison. *Id. House* also cited the continuing brain development in adolescents as a basis for its holding and found that under United States Supreme Court jurisprudence there was no bright line rule for determining when a juvenile becomes an adult, noting the designation of age 18 for adulthood "appears to be somewhat arbitrary." *Id.* ¶¶ 54-55. But see *Harris II*, 2018 IL 121932, ¶ 60 (noting that new research findings do not necessarily alter the traditional line at age 18 between adults and juveniles); *LaPointe*, 2018 IL App (2d) 160903, ¶ 44 (finding, on the contrary, that United States Supreme Court jurisprudence explicitly drew a bright line between juveniles and adults at age 18).

¶ 28    Nevertheless, as we have previously stated, our supreme court's holding in *Harris II* overturned the *House* decision. Even if we were to follow the *House* court's reasoning, the defendant's as-applied proportionate penalties claim in this case still must fail. Unlike in *House*, he was not a teenager on the cusp between a juvenile and adult who was minimally culpable. Additionally, the defendant in this case was far from the "least culpable offender imaginable." Rather, he developed an intricate plan for the murders, executed those plans, and elicited the aid of his younger brother in doing so. In *Leon Miller*, defendant acted only as a momentary lookout and did not enter the building where the actual murder occurred. Here, by contrast, the defendant significantly participated in the murders and in the concealment of a homicidal death. He began planning the murders several weeks in advance; he and his younger brother decided they would kill their grandmother and her friend, dispose of the friend's body, and frame the friend for their grandmother's murder. After the defendant beat his grandmother to death with a hammer, he helped his brother beat the friend to death with the same hammer. The men then tried to develop an alibi by going to visit their mother in the hospital. The defendant staged a purported discovery of his grandmother's body by inviting a friend to dinner at the grandmother's house. Thereafter, the defendant and his brother dumped their grandmother's friend's body in a shale pit and tried to make it look like the friend killed their grandmother. The defendant has not shown any remorse for his involvement in the crimes. Thus, the evidence established that the defendant was the principal offender and was far from minimally culpable. See *White I*, 209 Ill. App. 3d at 868 (finding that the evidence presented at trial was sufficient to support his convictions). In short, the defendant did not lack the necessary degree of culpability for a mandatory life sentence, as he now argues.

¶ 29    Having reviewed the defendant's case in light of his present contentions, we cannot say that the application of the multiple-victims murder statute rendered his mandatory life term unconstitutional as applied under the proportionate penalties clause. Given the violent and serious nature of these murders; the defendant's culpability in planning, committing, and attempting to avoid accountability of the crimes; and his status as an adult principal offender, a mandatory sentence of natural-life imprisonment does not shock the moral sense of the community and does not violate the proportionate penalties clause of the Illinois Constitution. See *Pittman*, 2018 IL App (1st) 152030, ¶ 40 (similarly finding).

¶ 30 Furthermore, even though the court did not take the defendant's age into account during sentencing, several appellate cases have determined that a trial court's failure to consider a defendant's youth amounts to nothing more than a garden variety claim that the court abused its sentencing discretion. See *People v. Hoover*, 2019 IL App (2d) 170070, ¶ 38 (citing *LaPointe*, 2018 IL App (2d) 160903, ¶ 61). For the purposes of postconviction proceedings, any such allegation does not amount to a "genuine claim of a constitutional deprivation." (Emphasis omitted.) *Id.* And it is not the same as contending that his life sentence was so disproportionate as to violate the constitutional prohibition. *Id.*

¶ 31 Although the mandatory sentencing law for juveniles and young adults continues to evolve, we do not believe this case presents one of those rare instances where the defendant should be allowed to proceed in his successive postconviction petition. See *Bailey*, 2017 IL 121450, ¶ 39 ("successive postconviction petitions are highly disfavored"). Simply put, the defendant cannot establish the necessary prejudice because his claims are legally meritless, his factual assertions are unsupported, and his successive petition is insufficient to justify further proceedings under the Act.

¶ 32                                         III. CONCLUSION
¶ 33 We affirm the denial of the defendant's motion for leave to file a successive postconviction petition.

¶ 34 Affirmed.