2022 IL App (1st) 200301-U

FIFTH DIVISION
January 28, 2022

No. 1-20-0301

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04 CR 3039 |
| | ) | |
| VICTOR VELEZ, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

*Held*:  We affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition because the motion failed to allege sufficient facts to demonstrate prejudice.

¶ 1    Defendant Victor Velez appeals from the circuit court's denial of his motion for leave to

file a successive *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West Supp. 2019)), arguing that the court erred because his petition sufficiently alleged a claim that his sentence was an unconstitutional *de facto* life sentence. We affirm.

¶ 2                                                    BACKGROUND

¶ 3     This court described the case's facts in detail in the opinion on direct appeal, and accordingly, we provide herein only those facts necessary to resolve defendant's current claim. See *People v. Velez*, 388 Ill. App. 3d 493 (2009).

¶ 4     Defendant was charged by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West Supp. 2003)) following an incident on December 29, 2003. The State tried defendant along with co-offender Jesus Vega in separate but simultaneous jury trials.

¶ 5     At trial, Roselee Soto,[1] victim Jose Soto's widow, testified that on December 29, 2003, she witnessed Vega, whom she identified in court, shoot Jose in area near Armitage Avenue and Karlov Avenue in Chicago. Roselee tried to drive Jose to the hospital, but struck another vehicle during the trip, after which an ambulance arrived and transported Jose to the hospital. He ultimately died of his injuries. Roselee later identified Vega in a lineup. On cross-examination, Roselee testified that she did not see defendant during the incident.

¶ 6     Edna Aguayo, Vega's stepcousin, testified that Vega and defendant visited her at her home on December 29, 2003. Chicago police detective Vincent Viverito testified that he spoke to Aguayo while investigating the case, and she informed him of Vega and defendant's visit.

¶ 7     Assistant state's attorney Jeanne Bischoff testified that on January 10, 2004, she met with defendant at the police station, where she Mirandized him and he agreed to an interview. Defendant admitted to his involvement in Jose's shooting during the interview, and provided a handwritten statement. In the statement, defendant relayed that after he and Vega visited

---

[1] Because Roselee and Jose share a last name, we will refer to them by their first names.

Aguayo, Vega told defendant that a man in a nearby bar owed him money, and Vega planned to shoot the man if he did not pay. Vega told defendant to "watch his back" and alert him if any police officers approached. Defendant complied, and witnessed Vega shoot Jose 20 to 25 minutes later, though defendant did not know Jose's identity at the time. During the interview, defendant told Bischoff that "at the time of the shooting he feared for his life because if he didn't watch out for [Vega] the gang might do something real bad to him." The jury found defendant guilty of first degree murder on a theory of accountability (720 ILCS 5/9-1(a)(1) (West Supp. 2003)).

¶ 8    Defendant's presentence investigation (PSI) report showed he had prior juvenile adjudications and an adult conviction for drug-related crimes, as well as a juvenile adjudication for firearms offenses. His mother and grandmother raised him, and he maintained "strong" relationships with them. He also had "strong" relationships with his two sisters, and did not know of any family members with substance abuse problems or who had been convicted of a crime. Defendant had a four-year-old daughter with whom he had an "excellent" relationship. He left high school because he was incarcerated, but maintained a "D" average while enrolled, and did not require special education. He did not have a history of mental health issues. Defendant belonged to the Maniac Latin Disciples (MLD) gang from the ages of 15 to 20 years old.

¶ 9    The circuit court denied defendant's motion for a new trial. At sentencing, in mitigation, defense counsel emphasized that defendant had a small child and a "good family," and asked for the minimum sentence. The court sentenced defendant to 45 years' imprisonment. In so ruling, the court noted that defendant "[a]pparently had a strong, supportive family," made "modest" educational achievements, and had a "somewhat sporadic" work history. The court also stated

that defendant had "no discernible mental problems or addictions to drugs or alcohol," and was formerly a MLD gang member. The court denied defendant's motion to reconsider sentence.

¶ 10    Defendant appealed, arguing that the circuit court made evidentiary errors, he was denied his right to a fair trial, his counsel was ineffective, the evidence at trial was insufficient to sustain the verdict, and his sentence was excessive. This court affirmed. *Velez*, 388 Ill. App. 3d 493.

¶ 11    On April 20, 2010, defendant filed a *pro se* petition pursuant to the Act, arguing that his sentence was invalid and his counsel was ineffective. The circuit court summarily dismissed the petition, and this court affirmed. *People v. Velez*, 2011 IL App (1st) 101650-U.

¶ 12    On October 1, 2019, defendant filed a *pro se* motion for leave to file a successive postconviction petition, in which he alleged that his 45-year sentence was an invalid *de facto* life sentence pursuant to *Miller v. Alabama*, 567 U.S. 460 (2021), *People v. Harris*, 2018 IL 121932, and their progeny. He claimed that though he was 21 years old at the time of his offense, he was entitled to protections under *Miller* because there was an "emerging consensus" in "brain research" that "young adults continue to develop into their mid-20's." Defendant cited law review articles and scientific studies in support of this allegation, including a study claiming that juveniles were "particularly susceptible to peer pressure."

¶ 13    Defendant alleged he did not raise the claim earlier because the caselaw under which he proceeded did not exist at the time of his initial petition. He continued that the sentencing court "failed to consider" his "youth and its attendant characteristics in imposing his sentence." Defendant further alleged that the sentencing court did not consider "any particular evidence" of his "immaturity, impetuosity, nor did the court make findings as to the affect [*sic*] peer pressure may have had on the alleged offenses," adding that his "father was gang affiliated, his mother

was 15-years-old when she had him, *** he was raised [by] his grandparents, [and] the area where he was raised was around gangs, drugs, and prostitutes, along with murderers."

¶ 14    On January 10, 2020, the circuit court denied the motion for leave. In its written order, the court stated in relevant part that defendant's petition did not demonstrate that *Miller*'s protections should apply to him, and instead only made "conclusory allegations." The court continued that defendant did not "support his petition with evidence from the record" or "elaborate on facts that would show that his circumstances would warrant *Miller*" protections. It further found that he alleged "no familial pressure or peer pressure from others." This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    On appeal, defendant claims the circuit court erred by denying his motion for leave to file a successive postconviction petition because his petition established both cause and prejudice for his claim that his 45-year sentence was an unconstitutional *de facto* life sentence.

¶ 17    The Act provides a mechanism for a criminal defendant to challenge his conviction on the basis that it violates his rights under the federal or state constitutions, or both. *People v. Smith*, 2014 IL 115946, ¶ 22. The Act permits one petition as of right, and a defendant must receive leave from the circuit court to file a successive petition. 725 ILCS 5/122-1(f) (West Supp. 2019). Successive petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. The circuit court may grant a defendant leave to file a successive petition where, as relevant here, that defendant demonstrates both cause for why he could not raise the claim earlier, and prejudice should he be denied the chance to pursue the claim. 725 ILCS 5/122-1(f) (West Supp. 2019). To demonstrate prejudice, the defendant must show that the alleged error was so severe that his conviction or sentence violates due process. *Id*. When considering the petition, the circuit

5

court will accept all well-pleaded factual allegations as true unless positively rebutted by the record. See *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 137 (citing *People v. Robinson*, 2020 IL 123849, ¶ 45). The cause-and prejudice test is a "more exacting standard that the gist standard" circuit courts use to review initial postconviction petitions at the first stage. *People v. Conick*, 232 Ill. 2d 132, 142 (2008). We review the circuit court's decision to deny a defendant leave to file a successive postconviction petition *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 18 Defendant here argues that his petition demonstrated both cause and prejudice for his claim that his 45-year sentence was an unconstitutional *de facto* life sentence. In support, he first cites to *Miller* and *Harris*. In *Miller,* the United States Supreme Court held that the Eighth Amendment to the federal constitution barred mandatory life sentences without the possibility of parole for juvenile offenders, explaining that, "By making youth (and all that accompanies it) irrelevant to the imposition of the harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Miller*, 567 U.S. at 479. In *Harris*, 2018 IL 121932, our supreme court explained that while *Miller* itself only applies to defendants under the age of 18, a young adult defendant with brain development akin to a juvenile could pursue a *Miller*-based claim that his sentence was unconstitutional as applied to him pursuant to the proportionate penalties clause of the Illinois constitution. *Id.* ¶¶ 45-48. The proportionate penalties clause states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the clause when, relevant here, it is so "cruel, degrading, or disproportionate to the offense" that it "shocks the moral sense of the community." *People v. Ligon*, 2016 IL 118023, ¶ 10. Later, in *Buffer*, our supreme court clarified that a sentence longer than 40 years may be considered a *de facto* life sentence from which a juvenile defendant, and, through *Harris*,

potentially young adult defendants, could pursue a claim for *Miller*-based relief. *Buffer*, 2019 IL 122327, ¶¶ 41-42.

¶ 19     For a young adult defendant to sufficiently allege prejudice in a successive petition for a young adult *Miller*-based claim, the defendant must demonstrate "how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision *applies to* [his] *specific facts and circumstances*." *Harris*, 2018 IL 121932, ¶ 46 (emphasis added). The defendant must also submit some documentation or evidence to show his own brain development was delayed. See *Smith*, 2014 IL 115946, ¶ 35.

¶ 20     Here, the record shows that defendant filed his initial postconviction petition on April 20, 2010, before the United States Supreme Court decided *Miller*. Our supreme court then recognized as-applied young adult *Miller*-based claims in *Harris* on October 18, 2018. *Harris*, 2018 IL 121932. Defendant filed his motion for leave to file a successive postconviction petition on October 1, 2019. Based on this chronology, the State concedes that defendant has demonstrated cause for not raising his current claim earlier, and we agree.

¶ 21     We next consider whether the motion for leave demonstrated prejudice. In the motion, defendant alleged that though he was 21 years old at the time of the incident, his 45-year sentence was an unconstitutional *de facto* life sentence as-applied to him due to the "emerging consensus" in "brain research" that suggests young adult brains are still developing at the age of 21. Defendant cited articles and scientific studies for the proposition. He further alleged that these articles and studies suggest youths are "particularly susceptible to peer pressure." Specific to his case, defendant alleged that the sentencing court did not consider evidence of his "immaturity" or "impetuosity," and that the court did not make findings as to the effect peer pressure may have had on his alleged offenses. In support, defendant cited that his "father was

gang-affiliated," his mother was 15 years old when she gave birth to defendant, he was raised by his grandparents, and his neighborhood had "gangs, drugs, and prostitutes, along with murderers."

¶ 22   On this record, we find that defendant failed to plead how his own specific facts and circumstances indicate *Miller* should apply. We acknowledge that our supreme court has not established a definitive pleading standard here, and the cases addressing the issue have arrived at seemingly divergent results; indeed, both parties cite numerous cases whose results favor their positions.[2]

¶ 23   We believe that the case law is clear, however, that a defendant must allege specific facts that relate the science of young adult brain development to his own facts and circumstances, and it is here that defendant's petition fails. See *Harris*, 2018 IL 121932, ¶ 46. Defendant's only specific factual allegations about his circumstances relate to his family history, which he alleges the sentencing court failed to consider. These assertions are insufficient for two reasons.

¶ 24   First, defendant's petition fails to allege that these circumstances actually affected his brain development such that he was deserving of *Miller* protections. Defendant makes no allegation, and provides no evidence or documentation, to support the proposition that the circumstances of his family history and background actually influenced his brain development. Such allegations are required for a young adult defendant to successfully allege prejudice in this context. See *Carrion*, 2020 IL App (1st) 171001, ¶ 38 (no prejudice where the defendant failed

---

[2] Defendant's cited cases include *People v. Horshaw*, 2021 IL App (1st) 182047; *People v. Lenoir*, 2021 IL App (1st) 180269; *People v. Brewer*, 2021 IL App (1st) 172314; *People v. Ross*, 2020 IL App (1st) 171202; *People v. Franklin*, 2020 IL App (1st) 171628; and *People v. Daniels*, 2020 IL App (1st) 171738.

The State's cited cases include *People v. Carrion*, 2020 IL App (1st) 171001; *People v. Moore,* 2020 IL App (4th) 190528; and *People v. White*, 2020 IL App (5th) 170345.

to allege "how he was particularly affected by any immaturity or special circumstances that would provide a compelling reason to advance" his petition); see also *People v. White*, 2020 IL App (5th) 170345, ¶ 24 (allegation of difficult family history insufficient to "rise to the level of special circumstances that would provide a compelling reason" to advance the petition).

¶ 25    Second, the record positively rebuts any implication that defendant's family life rendered his brain development more akin to a juvenile's. Instead, the record shows defendant had a young child with whom he maintained a relationship, education and work history, no history of drug abuse or mental health issues, and had strong familial relationships, all indicating adjustment to adult life. The sentencing court referenced this history during his sentencing hearing, and neither defendant nor his counsel said anything to contest the court's characterization. Thus, to the extent defendant's petition can be interpreted as generally alleging that his background affected his brain development, such allegations would be positively rebutted by the trial record. See *Horshaw*, 2021 IL App (1st) 182047, ¶ 137.

¶ 26    Defendant argues in his reply brief that his petition incorporated by reference the entirety of the trial record, from which this court could intuit that defendant displayed juvenile characteristics. This argument similarly fails, though, because it is incumbent upon a defendant to make specific assertions establishing prejudice in his petition. Here, aside from the portion discussed above, defendant's petition only contains general assertions regarding the status of research on young adult brain development. It follows that without specific allegations to defendant's facts and circumstances, his petition falls short of *Harris*'s requirements to show prejudice in this context. See *People v. Holman*, 2017 IL 120655, ¶ 30; see also *Carrion*, 2020 IL App (1st) 171001, ¶ 38 (no prejudice shown where the defendant "generally" described

studies regarding young adult brain development without relating those studies to his own immaturity or circumstances).

¶ 27    Defendant also contends that his allegations are similar to those found sufficient in *Horshaw*, which he discusses at length. See *Horshaw*, 2021 IL App (1st) 182047. We disagree. In *Horshaw*, the defendant alleged in his successive petition that the record showed he had a plausible immaturity argument because he turned 18 years old only months after the incident, suffered from "adolescent brain deficiencies" and "significant" head trauma, had a difficult background, and was susceptible to peer pressure. *Id.* ¶ 145. The defendant's PSI also described drug abuse issues for which defendant received no treatment. *Id.* ¶ 148. The court found these allegations sufficient to allege prejudice. *Id.* ¶¶ 142, 150. Here, by contrast, defendant did not allege any specific basis for immaturity or connect his background to any specific characteristic of his brain's development, and the PSI directly rebutted his general allegations that his difficult family upbringing affected his brain development.

¶ 28    Finally, we note that our supreme court recently addressed a similar issue in *People v. House*, 2021 IL 125124. *House*, however, does not control here because it concerned an initial postconviction petition, and therefore the court had no reason to address the cause-and-prejudice pleading standard for successive petitions. See *House*, 2021 IL 125124, ¶¶ 7-9, 29.

¶ 29                                      CONCLUSION

¶ 30    Defendant's petition failed the cause-and-prejudice test required for a circuit court to grant leave to file a successive postconviction petition because he failed to allege sufficient facts to relate the science of young adult brain development to his own specific facts and circumstances. Accordingly, the circuit court did not err by denying defendant's motion for leave to file a successive postconviction petition.

¶ 31　Affirmed.