2022 IL App (1st) 200164

FIRST DISTRICT
SIXTH DIVISION
April 29, 2022

No. 1-20-0164

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 485 |
| | ) | |
| DERRICK THOMAS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Pierce concurred in the judgment and opinion.
Justice Mikva dissented, with opinion.

**OPINION**

¶ 1     Following a jury trial, defendant Derrick Thomas was convicted of first degree murder, attempted first degree murder, and attempted armed robbery and sentenced to a total of 80 years' imprisonment, the minimum sentence in light of verdicts that defendant personally discharged a firearm causing death during the murder and great bodily harm during the attempted murder. We affirmed on direct appeal. *People v. Thomas*, 2017 IL App (1st) 142557. Defendant now appeals from the summary dismissal of his postconviction petition, contending that he made at least the gist of a showing that his *de facto* life sentence for offenses committed when he was 18 years old constitutes an as-applied violation of the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. 1, § 11. For the reasons stated below, we affirm.

¶ 2                                   I. JURISDICTION

¶ 3     The circuit court summarily dismissed defendant's September 2019 postconviction petition, as supplemented in October 2019, on December 5, 2019. Defendant filed his notice of appeal by mailing it on January 2, 2020, with the circuit court clerk marking it as filed on January 8, 2020. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017) governing appeals from a final judgment in a postconviction proceeding.

¶ 4                                   II. BACKGROUND

¶ 5     Defendant was charged, in relevant part, with the first degree murder of Arvon Grays, attempted first degree murder of Terrence Redditt, and attempted armed robbery of Redditt on or about November 15, 2011. He allegedly personally discharged a firearm, proximately causing death while committing the murder and proximately causing great bodily harm while committing the attempted murder.

¶ 6                                   A. Trial

¶ 7     Redditt testified that he and Grays were wholesaling tire rims and clothing in 2011. Redditt was doing that when he met defendant in late October or early November of 2011. He identified defendant at trial as the man he met and "the guy right there that shot me." They discussed Redditt selling some merchandise and exchanged telephone numbers. About a week later, defendant called Redditt and brought him a man who bought his rims. On November 15, 2011, defendant called Redditt from a different number than he provided in October, and they discussed the tire rims and a credit card scam in which Redditt had participated. Defendant told Redditt that his brother wanted to buy tire rims from Redditt.

¶ 8      Later that day, Redditt and Grays met defendant at a home, with two young people nearby. Neither Redditt nor Grays was armed. Defendant walked towards Redditt, who exited the car to talk with him while Grays stayed in the car. Redditt noticed that the young people with defendant looked nervous, as if they anticipated something. When he asked defendant why, he replied that "they're scary." Redditt asked defendant where the buyer was, and defendant pretended to call someone. Redditt turned his back on defendant and told Grays that he believed defendant was not going to buy anything but probably do a "stickup." When Redditt turned around, defendant pointed a gun at his stomach and said, "Give me everything." Redditt asked defendant if he was "for real," and he shot Redditt in the stomach. As Redditt ran away, defendant chased him and fired two more shots, striking him in the side. Defendant fled after Redditt pretended he saw a police officer. Redditt made his way to a nearby porch and heard more gunshots, which he presumed was defendant shooting Grays. Redditt was taken by ambulance to the hospital, where he had surgery. As of trial, he still had stomach pains due to the shooting. While in the hospital, he learned that Grays had been killed. Redditt's car had three bullet holes in it after the incident that it did not have before. He identified defendant in a photograph and a police lineup later in November 2011.

¶ 9      Robert Williams and Diamond Isom testified that they were at a friend's home on November 15, 2011, when defendant came by. He asked Isom to lend him her cellphone so he could "do a little sting" or "hit a sting," which Williams explained meant committing a robbery. Isom lent defendant her cellphone for $50. He showed Williams and Isom the outline of a gun inside his clothing and said he was going to rob a man he had met. They went to the porch of a nearby home, where defendant approached a car with two occupants. The driver exited and spoke with defendant. Williams and Isom heard defendant tell the driver "Don't move," and the driver

ran away. Defendant fired several gunshots at the fleeing driver and then at the car. Neither Williams nor Isom saw anyone but defendant holding a gun.

¶ 10    Grays died of a single gunshot wound, and Redditt's treatment for multiple gunshot wounds included intestinal surgery. A bullet was recovered from Redditt at the hospital and another was recovered from Grays at the morgue. Four shell casings were found at the scene, and three bullets and a bullet fragment were found inside the car. A forensic scientist opined that the four shell casings from the scene were fired from the same gun.

¶ 11    Defendant testified that he met Redditt about two to three weeks before the incident of November 15, 2011, and they discussed a credit card scam and exchanged telephone numbers. Redditt called him later that day to discuss the scam. On November 15, 2011, defendant saw Williams and Isom but did not tell them that he was armed or that he intended to commit a robbery. He called Reddit and met with Redditt and Grays, who he had not seen before, to discuss the scam. He shot them in self-defense when Redditt demanded his money and started to draw a gun from his waistband. He fired once, and then fled, firing more shots as he ran. He acknowledged firing when Redditt had not fully drawn the gun. He also acknowledged initially telling police after his arrest that he was not involved in the shooting and did not know Redditt and then telling police that Williams shot Redditt and Grays when Redditt tried to rob them.

¶ 12    On this evidence, the jury found defendant guilty of first degree murder, attempted first degree murder, and attempted armed robbery. It found that he personally discharged a firearm proximately causing death during the murder and great bodily harm during the attempted murder.

¶ 13                                      B. Sentencing

¶ 14    The presentencing investigation report (PSI) reflected that defendant was born in April 1993 and so was 18 years old at the time of his offenses in November 2011. He had a prior

conviction for "fleeing and eluding" and a juvenile adjudication for unlawful use of a weapon. Petitions alleging "abuse/neglect/injurious environments" were filed in 2001 for defendant and his siblings, and "[t]here was a finding, in 2004, of abuse and neglect and injurious environment." However, the PSI also states that defendant "believes these petitions were filed without foundation" and neither he nor his siblings "were ever abused or neglected." Defendant did not complete high school but "enrolled in a GED class" and "said he has recently been taking classes at the jail." He denied ever drinking alcohol, using drugs, or being a gang member.

¶ 15    During the July 2014 sentencing hearing, the State noted that defendant could receive a prison sentence from an aggregate 80 years at the minimum up to natural life in light of the firearm enhancements. The State presented a victim impact letter from Grays's sister. While acknowledging that defendant did not have a lengthy criminal history, the State described the case as "egregious," noting that he lured the victims into coming to him and that Grays was shot as he sat in a car while Redditt was shot as he ran away.

¶ 16    Defense counsel acknowledged the statutory sentencing scheme but objected that it was "unconscionable." Counsel noted that defendant had a weapons arrest as a juvenile, which the court said it would not consider in sentencing, and no prior felony convictions. Counsel noted that defendant was completing school while in jail, had no gang affiliation, and may have been abused and neglected as a child.

¶ 17    Before imposing sentence, the court said: "I don't believe the sentence is unconscionable. The legislature feels it's an appropriate sentencing range. They determined that in their opinion it's not unconscionable." The court noted that defendant was a "young guy" of 18 at the time of the offenses and "still a young guy" of 21 at sentencing but nonetheless responsible for his choices to shoot Redditt and Grays "over some nonsensical plan of getting some money from Redditt."

¶ 18    The court sentenced defendant to consecutive prison terms of 45 years for first degree murder, 31 years for attempted first degree murder, and 4 years for attempted armed robbery. The court stated that it read the PSI and that defendant had "basically *** no record." He was receiving the minimum sentence but it was "practically speaking a life sentence," and he would not be restored to useful citizenship "unless he lives to be a really old man possibly which hopefully he does."

¶ 19    Defendant moved for reconsideration of his sentence, claiming that it was excessive in light of his "background and the nature of his participation in the offense," that the State failed to prove his eligibility for extended sentences, and that consecutive sentencing was improper. The court denied the motion, stating that "[i]t's a lot of time, but when you do bad things, there are bad consequences."

¶ 20                                    C. Direct Appeal

¶ 21    On direct appeal, defendant contended that his 80-year aggregate sentence was a *de facto* life sentence that, as he was only 18 years old at the time of the offenses, violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. He also contended that trial counsel was ineffective for failing to argue and create a record that his sentence was unconstitutional. *Thomas*, 2017 IL App (1st) 142557, ¶¶ 1, 21, 49.

¶ 22    We rejected those contentions and affirmed. *Id.* ¶¶ 54-55. The parties acknowledged that defendant would have to serve at least 73 years in prison, so we did not dispute that it was a *de facto* life sentence. *Id.* ¶¶ 25-27. However, we noted that neither the United States Supreme Court nor our supreme court had applied *Miller* to adults and that this court had declined to do so. Thus, we found that defendant's sentence did not violate the eighth amendment. *Id.* ¶¶ 26-28.

¶ 23 As to the proportionate penalties clause, we noted that defendant's aggregate 80-year sentence was the minimum sentence mandated by statute for his offenses with the firearm enhancements and that our supreme court had upheld mandatory firearm enhancements against proportionate-penalties challenges. *Id.* ¶¶ 29-32. We acknowledged that another panel of this court had found the sentence of a 19-year-old defendant unconstitutionally disproportionate in *People v. House*, 2015 IL App (1st) 110580.[1] *Thomas*, 2017 IL App (1st) 142557, ¶¶ 33-34. However, we distinguished *House* in that the defendant therein was found guilty on an accountability basis while the instant defendant was the active shooter who proximately caused the death of one victim and great bodily harm to another. *Id.* ¶ 34. We also acknowledged that another panel had found an 18-year-old defendant's 76-year sentence disproportionate in *People v. Harris*, 2016 IL App (1st) 141744,[2] but declined to follow it and explained that decision at length. *Thomas*, 2017 IL App (1st) 142557, ¶¶ 37-47.

¶ 24 We found that the trial court considered defendant's youth and rejected his claim that it rendered his sentence unconscionable because of his actions in and around the offenses, including luring the victims to his attack. *Id.* ¶¶ 35-36. We noted that the legislature adopted a requirement that specified factors related to youth be considered in sentencing of persons under 18 years old (730 ILCS 5/5-4.5-105 (West Supp. 2015)) and found that "the legislature has deemed that failure to take those factors into account does not render a sentence cruel or degrading or so disproportionate to the offense that it shocks the moral sense of the community." *Thomas*, 2017 IL

---

[1]That opinion has since been vacated and reconsidered pursuant to a supervisory order by our supreme court. *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order). With subsequent proceedings, the latest opinion in that case is *People v. House*, 2021 IL 125124, which we shall discuss below.

[2]The supreme court has since affirmed that decision in part and reversed in part, in an opinion we shall discuss below. *People v. Harris*, 2018 IL 121932.

App (1st) 142557, ¶¶ 46-47. We therefore found no proportionate penalties violation in defendant's sentence. *Id.* ¶ 48.

¶ 25 We turned lastly to defendant's claim that trial counsel was ineffective for not raising these constitutional claims in the sentencing hearing.

> "In essence, defendant contends the trial court would have sentenced him to a term of less than 80 years had the court been made aware of the precedent that defendant now presents here. He argues the trial court was in the best position to consider whether the holdings of *Miller* and the other cases discussed above should extend to defendants between the ages of 18 and 21." *Id.* ¶ 50.

However, we found that defendant "relies on speculation that, had his counsel explained the *Miller* decision in detail at sentencing, the trial court would have ventured below the statutory minimum sentence" and that, "[d]espite defendant's repeated assertions to the contrary, those cases do not address the culpability of an adult defendant. Here, the trial court clearly indicated that defendant was an 18-year-old offender who was responsible for his acts of shooting two people, one fatally." *Id.* ¶ 52. For instance, defendant cited *People v. Miller*, 202 Ill. 2d 328 (2002), often called *Leon Miller*, but that defendant was 15 years old and found guilty on an accountability basis. Thus, that defendant was unlike the instant defendant. *Thomas*, 2017 IL App (1st) 142557, ¶ 53.

¶ 26 Justice Mikva concurred in part and dissented in part, rejecting defendant's ineffective assistance claim but explaining at length why she would follow *Harris* and find that defendant had a valid proportionate penalties claim. Justice Mikva maintained that the trial court had no discretion to properly consider the defendant's youth in imposing the minimum 80-year aggregate sentence. *Id.* ¶¶ 57-73 (Mikva, J., concurring in part and dissenting in part).

¶ 27                             D. Petition for Forensic Testing

¶ 28    Defendant filed a *pro se* petition for forensic testing in June 2018. 725 ILCS 5/116-3 (West 2018). He sought ballistics testing of the recovered firearms evidence. The circuit court denied the petition in July 2018, and we affirmed on appeal. *People v. Thomas*, No. 1-18-2013 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)). We noted that defendant was claiming that testing could show that the fatal bullet did not come from his gun but instead was fired by Redditt. *Id.* ¶ 5. He also claimed that his trial counsel was ineffective for declining the State's offer to conduct ballistic testing of the recovered bullets. *Id.* We noted that there was no evidence that anyone but defendant fired a gun, and defendant acknowledged that he did not testify to anyone else shooting. Nevertheless, defendant argued that he testified to Redditt having a firearm and to fleeing Redditt in fear for his life. *Id.* ¶¶ 2, 5. We found the claims to not be of arguable merit. *Id.* ¶¶ 4, 6.

¶ 29                             E. Postconviction Proceedings

¶ 30    Defendant filed his *pro se* postconviction petition in September 2019, claiming in relevant part that his *de facto* life sentence violated the proportionate penalties clause because he was a young adult at the time of the offenses. Relying on our supreme court's decision in *People v. Harris*, 2018 IL 121932, he argued that his claim was appropriate for postconviction proceedings because the direct appeal record was not developed for an as-applied proportionate penalties challenge. He argued that the circuit court was not bound to follow this court's direct appeal decision because it "prematurely held that *de facto* life sentence did not violate the Illinois constitutional rights as applied to" him. Except to state that he was 18 at the time of the offenses, was a principal offender, and received a *de facto* life sentence, defendant's only factual allegation

was that Dr. James Garbarino of Loyola University Chicago "states that the brain does not mature until into the mid-20s."

¶ 31    Defendant filed a *pro se* supplemental petition in October 2019. In relevant part, he repeated his claim that, under the supreme court decision in *Harris*, his as-applied constitutional challenge to his *de facto* life sentence required a record developed for the purpose in postconviction proceedings. The supplemental petition added no factual allegations to that claim.

¶ 32    In December 2019, the circuit court summarily dismissed defendant's petition. In relevant part, it found that defendant's claim was not barred as *res judicata* because the supreme court decision in *Harris* opened the door for an as-applied proportionate penalties claim by a young adult. The court found that the trial and direct appeal record was not developed for an as-applied challenge because the information about defendant from the PSI was "basic." However, defendant's petition did not contain any new allegations regarding his youth-related facts and circumstances. While it is sufficient for a petitioner to allege enough facts to establish an arguable claim, the court found that defendant failed to do that. Moreover, even if defendant had established that he was entitled to be treated as a minor or juvenile for sentencing purposes, he would also have to demonstrate that his sentence was disproportionate. However, under *Leon Miller* and *People v. House*, 2019 IL App (1st) 110580-B, relief under proportionate penalties is available to defendants found guilty on an accountability basis, the court found. "Illinois courts have repeatedly rejected Proportionate Penalties challenges by juvenile offenders who were principal offenders and showed high levels of culpability." Thus, it concluded, even if defendant was treated as a minor, he would not receive relief from his sentence under the proportionate penalties clause.

¶ 33                                    III. ANALYSIS

¶ 34    Defendant contends on appeal that the summary dismissal of his postconviction petition

was erroneous because he stated at least the gist of a meritorious claim that his *de facto* life

sentence of 80 years' imprisonment for offenses committed when he was 18 years old constitutes

an as-applied violation of the proportionate penalties clause.

¶ 35    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a

procedure for persons under criminal sentence to claim their convictions resulted from a substantial

denial of their rights under the federal and state constitutions. A petition thereunder must "clearly

set forth the respects in which petitioner's constitutional rights were violated." *Id.* § 122-2. It may

be summarily dismissed within 90 days of filing and docketing if "the court determines the petition

is frivolous or is patently without merit." *Id.* § 122-2.1(a)(2).

¶ 36    A petition is frivolous or patently without merit when it has no arguable basis in law or

fact. *People v. Hatter*, 2021 IL 125981, ¶ 23. At the first or summary dismissal stage, a petitioner

is required only to include "a limited amount of detail and need not present formal legal arguments

or citations to legal authority." *Id.* ¶ 24. A "*pro se* petitioner is not excused, however, from

providing any factual detail at all surrounding the alleged constitutional violation." *Id.* All well-

pled facts in the petition not refuted by the record must be taken as true and liberally construed.

*People v. Johnson*, 2021 IL 125738, ¶ 25. We review the summary dismissal of a postconviction

petition *de novo*. *Hatter*, 2021 IL 125981, ¶ 24.

¶ 37                              A. *Miller* and its Progeny

¶ 38    In *Miller*, the United States Supreme Court held that a sentence of natural life imprisonment

or life without parole imposed mandatorily upon a person who was a minor at the time of his or

her homicide offense violates the eighth amendment because mitigating factors relating to youth

could not be considered in imposing the sentence. *Miller*, 567 U.S. at 489. In *People v. Holman*, 2017 IL 120655, ¶ 40, our supreme court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." But see *People v. Dorsey*, 2021 IL 123010, ¶¶ 41-42 (*Holman*'s holding that discretionary life sentences for juveniles violate the eighth amendment "is questionable in light of" *Jones v. Mississippi*, 593 U.S. ___, 141 S. Ct. 1307 (2021)). In *People v. Buffer*, 2019 IL 122327, ¶¶ 34-41, our supreme court determined that a prison sentence longer than 40 years is a *de facto* life sentence. The *Buffer* "defendant committed an offense, at age 16, that subjected him to a legislatively mandated minimum sentence of 45 years and for which he received a sentence of 50 years. Because defendant's sentence was greater than 40 years, we conclude that defendant received a *de facto* life sentence." *Id.* ¶ 42.

¶ 39 When a defendant who was a minor at the time of his offenses receives a life sentence, including a *de facto* life sentence under *Buffer*, a reviewing court must determine whether the trial court "failed to consider defendant's youth and its attendant characteristics in imposing that sentence." *Id.* Our supreme court has held that *Miller* mandates that a trial court consider the defendant's youth and related characteristics as mitigating circumstances before imposing a life sentence. *Holman*, 2017 IL 120655, ¶ 37 (citing *Miller*, 567 U.S. at 483, 489). A minor defendant "may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. While an express finding of incorrigibility is not required, "a trial court must consider some variant of the *Miller* factors before imposing a life sentence without the possibility of parole." *Id.* ¶ 43. Those factors include:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* ¶ 46 (citing *Miller*, 567 U.S. at 477-78).

Our inquiry into the *Miller* factors is strictly retrospective: "the only evidence that matters is evidence of the defendant's youth and its attendant characteristics at the time of sentencing. Whether such evidence exists depends upon the state of the record in each case." *Id.* ¶ 47.

¶ 40                                   B. *Harris* and Young Adults

¶ 41    In *Harris*, 2018 IL 121932, ¶ 53, our supreme court rejected a contention "that the eighth amendment protection for juveniles recognized in *Miller* should be extended to all young adults under the age of 21." The *Harris* court noted that the United States "Supreme Court has never extended its reasoning to young adults age 18 or over. Rather, the Supreme Court defined juveniles as individuals under the age of 18." *Id.* ¶ 56. Noting that various courts including this court had rejected the aforesaid contention, the *Harris* court concluded:

"We agree with those decisions and our appellate court that, for sentencing purposes, the age of 18 marks the present line between juveniles and adults. As an 18-year-old, defendant falls on the adult side of that line. Accordingly, defendant's facial challenge to his aggregate sentence under the eighth amendment necessarily fails." *Id.* ¶ 61.

¶ 42    The *Harris* court refrained from addressing a young adult's proportionate penalties challenge—that his "sentence is so wholly disproportionate to his offenses that it shocks the moral sense of the community" (*id.* ¶ 35)—finding that such a "claim is an as-applied challenge. Defendant contends that, as applied to his specific circumstances, the sentencing statutes resulting in a mandatory aggregate sentence of 76 years' imprisonment violate the Illinois Constitution." *Id.* ¶ 37. An as-applied challenge requires a showing that a statute is unconstitutional as applied to the defendant's specific circumstances, while a facial challenge requires that the defendant establish the statute to be unconstitutional under any possible set of facts. *Id.* ¶ 38. However, as the *Harris* defendant raised his claim on direct appeal, there was no evidentiary hearing or other circuit court record suitable for an as-applied proportionate penalties claim. *Id.* ¶ 40. Noting that *Holman* provided for an inquiry into a defendant's sentencing, *Harris* distinguished *Holman*, where

> "[t]he critical determinations were purely legal issues: deciding whether *Miller* also applied to discretionary life sentences for juveniles and defining the *Miller* factors to be considered in sentencing. [Citation.] The only other issue was determining from the 'cold record' whether the trial court adequately considered the *Miller* factors at the original sentencing hearing. [Citation.] Thus, the evidentiary record was sufficient to address the issues raised in *Holman*.

> In contrast, defendant in this case was 18 years old at the time of his offenses. Because defendant was an adult, *Miller* does not apply directly to his circumstances. The record must be developed sufficiently to address defendant's claim that *Miller* applies to his particular circumstances." *Id.* ¶¶ 44-45.

¶ 43    The *Harris* defendant contended that the trial record included "sufficient information about his personal history to determine whether the evolving science on juvenile maturity and brain

development applies to him." *Id.* ¶ 46. The supreme court rejected that contention, stating that the "record, however, includes only basic information about defendant, primarily from the presentence investigation report," so that it did "not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances." *Id.* The *Harris* court did not remand for an evidentiary hearing because the defendant's as-applied proportionate penalties claim could be raised in a collateral proceeding, such as a postconviction petition where facts not on the existing record are entered into evidence. *Id.* ¶ 48.

¶ 44     In *People v. House*, 2021 IL 125124, ¶¶ 5-8, a defendant who was 19 at the time of his offenses raised an as-applied proportionate penalties claim to his consecutive prison sentences of life and 60 years, and the circuit court dismissed his postconviction petition. The defendant "did not provide or cite any evidence relating to how the evolving science on juvenile maturity and brain development applies to his specific facts and circumstances." *Id.* ¶ 29. However, on appeal, the parties agreed to a remand for further postconviction proceedings to give the defendant "the opportunity to consult with counsel about his constitutional claims and to develop and present evidence to the trial court *** demonstrating how the evolving science on juvenile maturity and brain development applies to an emerging adult and to the petitioner's specific circumstances" (*id.* ¶ 22). Instead, this court found that the sentence violated the proportionate penalties clause as applied to the defendant and remanded for resentencing. *Id.* ¶ 23. Our supreme court found that doing so "without a developed evidentiary record or factual findings on the as-applied constitutional challenge" was reversible error. *Id.* ¶ 31. The supreme court's "analysis in *Harris* focused on development of the record in the trial court, not whether the challenge is raised in a collateral proceeding or on appeal, or whether the petitioner was a principal rather than an

accomplice in the crime." *Id.* The supreme court in *House* remanded for further postconviction proceedings. *Id.* ¶ 32.

¶ 45    In a case where a defendant who was 18 at the time of his offenses challenged his life sentence upon a negotiated guilty plea, *People v. Daniels*, 2020 IL App (1st) 171738, ¶¶ 1-2, this court stated that "it is premature at this juncture to conclude that the *only* way a defendant can establish cause and prejudice for the filing of a successive petition asserting an as-applied, youth-based sentencing claim is by demonstrating that the facts of his or her case align with those in *House*." (Emphasis in original.) *Id.* ¶ 31. In other words, the degree of participation in the offense is a relevant consideration but should not by itself be dispositive. *Id.* ¶ 32. "In *Harris*, our supreme court clearly envisioned an evidence-based factual inquiry when it declined to consider such a claim on direct appeal where the record included 'only basic information about [the] defendant, primarily from the presentence investigation report.' " *Id.* ¶ 31 (quoting *Harris*, 2018 IL 121932, ¶ 46). The *Daniels* defendant showed cause for his petition to proceed because the cases he relied upon for his claim did not exist when he pled, and showed prejudice as he "directed this court's attention to at least some contemporaneous documentation regarding his mental health and personal characteristics that he might use to support such a claim." *Id.* ¶ 34.

¶ 46    This court affirmed the denial of leave to file a *pro se* successive postconviction petition by a defendant who was 18 at the time of his offense; whose trial, direct appeal, and initial postconviction petition preceded *Miller*; and whose petition challenged his 100-year sentence as unconstitutional. *People v. Evans*, 2021 IL App (1st) 172809, ¶¶ 1-9. "Young adult offenders are not *entitled* to the presumption that the tenets of *Miller* apply to them pursuant to the proportionate penalties clause. [Citation.] Indeed, they must *establish a record* to support their argument ***." (Emphases in original.) *Id.* ¶ 19.

"In order for a young adult offender to receive sentencing protections pursuant to the proportionate penalties clause of the Illinois Constitution, which would be the appropriate path of relief for the defendant in this case, he must plead and ultimately prove that his *specific and individual characteristics* require the application of *Miller*. [Citation.] Although at the pleading stage the defendant is not required to prove anything, he still needs to plead *some facts* justifying further proceedings." (Emphases in original.) *Id.* However, "other than alleging that he was 18 years old when he committed his offense and was sentenced to 100 years' imprisonment, the defendant's petition failed to set forth *any* individual characteristics that would require the trial court to apply the sentencing protections set forth in *Miller*." (Emphasis in original.) *Id.* ¶ 20.

"Although, the law has undoubtedly continued to trend in the direction of increased protections for young adult offenders, with postconviction proceedings being the proper vehicle for them to seek such protections, they must still plead *specific and individual characteristics* as related to them. This is the only way to establish that they are entitled to the protections provided by *Miller* and its progeny as interpreted by the Illinois Supreme Court. Having failed to allege such facts showing that the tenets of *Miller* should apply to his particular circumstances, the defendant's petition does not support an as-applied challenge to his sentence under the proportionate penalties clause of the Illinois Constitution." (Emphasis in original.) *Id.* ¶ 21.

¶ 47   This court also affirmed the denial of leave to file a successive petition in various other cases. In *People v. White*, 2020 IL App (5th) 170345, ¶ 24, it found that "[o]ther than generally asserting studies that show that sometimes youthfulness can extend into a person's twenties, the defendant does not now allege how he was particularly affected by any immaturity." In *People v.*

*Moore*, 2020 IL App (4th) 190528, ¶ 40, appeal allowed, No. 126461 (Ill. Nov. 24, 2021), this court found that the defendant generally asserted that a 19-year-old's brain is more similar to a 17-year-old adolescent's brain than to a fully mature adult's brain and the fact that the present offense was his first adult conviction. However, "defendant's motion failed to provide any evidence to indicate how his own immaturity or individual circumstances would provide a compelling reason to allow" a successive petition. In *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 38, this court stated that "other than generally asserting studies show that sometimes youthfulness can extend into a person's late teens and early twenties, defendant does not now allege how he was particularly affected by any immaturity or special circumstances that would provide a compelling reason to advance his successive postconviction petition." Moreover, "[h]e has not raised any facts on appeal or in his petition that were not already included in the record, presented at his sentencing hearing, and considered by the trial court." *Id.* In *People v. Howard*, 2021 IL App (2d) 190695, ¶ 46, the defendant "made bare assertions that his age and background were not considered by the trial court."

¶ 48    Conversely, this court has reversed denials of leave to file successive petitions in various cases as well. In *People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 54-55, this court acknowledged that, "[a]s *Harris* instructs, young adult defendants are not entitled to make an as-applied challenge to their sentences under *Miller* unless they first show that *Miller* applies to them" and that "the petition and accompanying documents also must be enough to justify further proceedings." That said, the *Ruiz* court reversed where the

> "petition, in detailed, well-cited legal argument, sets out why the protections in *Miller*, and
> in the Illinois cases applying it, should benefit young adults. Ruiz cited 'recent research
> and articles' showing that the brain does not fully develop until the mid-20s, claiming that

'young adults as Ruiz was at 18 years old are more like adolescents than fully mature adults.' Ruiz claimed that he too was 'largely unsettled in [his] characters and habits and this must be taken into consideration' during sentencing. He claimed that his sentencing hearing 'clearly did not adequately focus on Ruiz['s] age of 18 and his rehabilitative potential.' " *Id.* ¶ 56.

In *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 150 (quoting *Carrion*, 2020 IL App (1st) 171001, ¶ 38), the motion

"was not a 'flat allegation as to evolving science on juvenile maturity and brain development' [citation] but sufficiently alleged that defendant could establish the existence of facts personal to him that warranted consideration of the *Miller* factors in fashioning an appropriate sentence and that the failure to do so made his 66-year sentence unconstitutional as applied to him under the proportionate penalties clause."

In *People v. Glinsey*, 2021 IL App (1st) 191145, ¶ 50, the defendant "was a mere 11 days past his eighteenth birthday," he "was not the main 'motivating' actor behind this offense," he "was a member of a gang since age 12 and, thereby, potentially subject to its peer pressure," and "the sentencing court's remarks do not indicate any consideration of defendant's age or any age-related factors."

¶ 49    Turning from successive petitions to initial postconviction petitions as in the instant case, this court has reversed the dismissal of a petition raising a young adult as-applied proportionate penalties claim where the defendant's "petition and the attachments supporting it make a connection between the applicable science and his own characteristics as a 19-year-old offender." *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 89. Similarly, this court reversed the summary dismissal of such a claim where the petition provided "facts that can be corroborated, are objective

- 19 -

in nature, and bear directly on the Supreme Court's observation in *Miller* that a hallmark of youth is the lack of a fully formed character—traits that are not fixed and a corresponding capacity for meaningful rehabilitation." *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 31. Quoting a paragraph in the petition where the defendant listed in detail his rehabilitative efforts in prison and expressly connected "his own particular circumstances and studies showing that young adults are more like juveniles than fully mature adults," this court found that "Zumot drew exactly that connection in [that] paragraph from his petition." *Id.* The *Zumot* court found that "the trial court record also supports his claim that he was the equivalent of a juvenile because he had rehabilitative potential that was constitutionally incompatible with the imposition of a life sentence," such as the trial court at sentencing expressly referring to the defendant's offenses as impulsive and "acting out" and the defendant as immature and expressly stating that he did not deserve a life sentence. *Id.* ¶ 35. The *Zumot* court noted that this court generally defers to the trial court's sentencing decision because it has the superior opportunity at sentencing to observe the defendant and weigh all the relevant sentencing factors. *Id.* ¶ 36. Lastly, we affirmed the summary dismissal of the petition in *People v. Haywood*, 2021 IL App (1st) 190809, ¶ 43, *pet. for leave to appeal pending*, No. 127858 (filed Nov. 5, 2021), where the only factual allegations in the petition were refuted by the record so that the "defendant presented *no* unrefuted factual allegations in support of his *Harris* claim." (Emphasis in original).

¶ 50                                    C. This Case

¶ 51     Here, we find that defendant's petition did not satisfy the requirement of *Harris* that a young adult defendant bears the burden of demonstrating that his particular circumstances fall under *Miller*, rather than presumptively falling under *Miller*, as would a minor at the time of the offense. Defendant alleged in his petition only that a Dr. Garbarino "states that the brain does not

mature until into the mid-20s." That does not address defendant's particular circumstances. This case is therefore distinguishable from *Wilson* and *Zumot*, where dismissal was inappropriate because the defendant provided factual allegations in support of his *Harris* claim. We believe this case is similar to *Haywood* in that, once allegations positively refuted by the record in that case are disregarded, the *Haywood* defendant and the instant defendant were left with their young-adult age at the time of their offenses, which under *Harris* is insufficient by itself to state a claim under *Miller* and its progeny.

¶ 52    Defendant acknowledges on appeal that his petition raised no particularized allegations but contends that the trial record—the PSI in particular—contains such facts. However, in summarily dismissing defendant's petition, the circuit court here echoed our supreme court in *Harris* that information from the PSI is "basic." It "does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances." *Harris*, 2018 IL 121932, ¶ 46. Defendant, as a young adult at the time of his offenses, bore the burden of alleging facts showing that his particular circumstances fall under *Miller* and that a sentence imposed on an adult pursuant to the relevant statutes is nonetheless so disproportionate to the offense that it shocks the moral sense of the community. See *id.* ¶¶ 35-36. Pointing to a few basic facts the trial court already knew when it imposed sentence is insufficient.

¶ 53    Lastly, the trial record here does not contain the support for defendant's claim that this court found in the trial record in *Zumot*. There, the court at sentencing expressly referred to the defendant's offenses as impulsive and the defendant as immature and, moreover, expressly stated that he did not deserve a life sentence. *Zumot*, 2021 IL App (1st) 191743, ¶ 35. These remarks by the trial court were powerful support for the *Zumot* defendant's claim. Here, by contrast, while the

trial court at sentencing noted defendant's youth and that his aggregate sentence was a *de facto* life sentence, it expressly rejected his claim that his sentence was unconscionable.

¶ 54    We therefore find no error in the summary dismissal of defendant's petition.

¶ 55                                          IV. CONCLUSION

¶ 56    Accordingly, we affirm the judgment of the circuit court.

¶ 57    Affirmed.


¶ 58    JUSTICE MIKVA, dissenting:

¶ 59    I fully agree with the majority that, pursuant to our supreme court's holding in *Harris*, Mr. Thomas will have to overcome the "burden of demonstrating that his particular circumstances fall under *Miller*." *Supra* ¶ 51. I disagree, however, as to when that burden must be met.

¶ 60    In my view, that inquiry should take place at the second stage of the postconviction process, where Mr. Thomas, with the assistance of counsel, must make a substantial showing of a constitutional violation. *People v. Cotto*, 2016 IL 119006, ¶¶ 27-28; *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At this first stage of his initial postconviction petition, however, Mr. Thomas need only "set forth the 'gist' of an *arguably* constitutional claim." (Emphasis added.) *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 15. This is not a high hurdle. As this court has explained in the past, a petition will fail to overcome this "relatively low factual threshold" only if it advances "an indisputably meritless legal theory or a fanciful factual allegation." *Id.* (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)).

¶ 61    Here, Mr. Thomas's *pro se* petition does not advance an "indisputably meritless legal theory" and it does not contain fanciful factual allegations. While it is true that Mr. Thomas did not explain in any significant detail how his individual characteristics at the time he committed his

crime support the applicability of *Miller*, this failure to connect-the-dots is understandable, considering that he is a prisoner with no legal training and extremely limited resources. Further, as his reply brief explains, while he did not assert "individual characteristics," he did "cite caselaw that expressed recognition of scientific findings establishing that a young person's neurological development does not stop once he reaches the age of 18, but continues well into the 20s."

¶ 62     The majority concludes that this is not enough, that "flat allegation[s]" of evolving science on juvenile brain development are insufficient to warrant access to the postconviction process. But both cases it cites in support of this proposition (*People v. Moore*, 2020 IL App (4th) 190528, ¶ 40, and *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 24) involved *successive petitions*, not initial petitions like this one. That is a different analysis. As our supreme court has made clear, "the cause-and-prejudice test for a successive petition involves *a higher standard* than the first-stage frivolous or patently without merit standard." (Emphasis added.) *People v. Smith*, 2014 IL 115946, ¶ 35. Here, the majority appears to be applying that "higher standard" to an initial postconviction petition.

¶ 63     The majority cites a single case where we affirmed the summary dismissal of an *initial* petition, *People v. Haywood*, 2021 IL App (1st) 190809, ¶ 43. That case was different. First, in that case, the *pro se* petition did not directly allege any claim that the defendant was the equivalent of a juvenile. *Id.* ¶ 42. Rather, we construed his petition liberally to discern that claim. *Id.* Also, our decision in that case was based on the fact that the two factual allegations the defendant argued supported his *Harris* claim—his lack of prior convictions and his relative culpability—were both "amply refute[d]" by the record. *Id.* ¶ 43. In contrast, Mr. Thomas made it clear in his petition that he was attempting to make a *Harris* claim, and nothing he has offered or argued in support of that

claim is refuted by the record. Our decision in *Haywood* does not support what the majority does here.

¶ 64    An underdeveloped claim is not the same as a frivolous or meritless claim. In my view, Mr. Thomas's claim is the former, not the latter. For that reason, he should be allowed to proceed to the second stage where, with the assistance of counsel, he will have the chance to develop a record, substantiate his argument, and attempt to overcome the burden that I agree with the majority is his to meet. I respectfully dissent.

**No. 1-20-0164**

| | |
|---|---|
| **Cite as:** | *People v. Thomas*, 2022 IL App (1st) 200164 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-485; the Hon. Stanley J. Sacks, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Robert N. Markfield, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Zachary M. Slavens, Assistant State's Attorneys, of counsel), for the People. |