2023 IL App (1st) 221359-U

SECOND DIVISION
December 19, 2023

No. 1-22-1359

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 16254 |
| | ) | |
| LARRY JOHNSON, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the summary dismissal of defendant's petition for postconviction relief; defendant forfeited the argument raised for the first time on appeal that the trial court improperly imposed consecutive sentences; and defendant's claim that as an emerging adult he is entitled to sentencing protections provided by *Miller v. Alabama* is frivolous and patently without merit where the claim is not supported by factual allegations that defendant's brain development was similar to that of a juvenile at the time of the offense.

¶ 2    The State charged, tried, and convicted defendant, Larry Johnson, for three counts of attempt (first degree murder). The circuit court of Cook County sentenced defendant to three terms of 31 years' imprisonment on each count to be served consecutively for a total aggregate sentence of 93 years' imprisonment. Defendant filed a direct appeal in which he only argued the trial court failed to conduct an adequate preliminary hearing pursuant to *People v. Krankel*, 102

Ill. 2d 181 (1984), on defendant's posttrial claim of ineffective assistance of trial counsel. This court agreed and remanded the case for an adequate *Krankel* hearing. Following remand, defendant appealed the trial court's findings under *Krankel*. The trial court appointed the Office of the State Appellate Defender to represent defendant. Defendant's appellate counsel filed a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967), requesting leave to withdraw as defendant's counsel because an appeal of the case would lack arguable merit. This court found the arguments regarding the *Krankel* hearing were conclusory and that defendant's remaining contentions were not the subject of the order on appeal. We granted the motion for leave to withdraw and affirmed the trial court.

¶ 3    Thereafter, defendant filed a *pro se* petition for postconviction relief. Defendant's *pro se* petition alleged, *inter alia*, that appellate counsel provided ineffective assistance by failing to raise several claims on direct appeal, among them a claim the trial court erred in imposing consecutive sentences. The specific ground on which defendant claimed appellate counsel should have challenged consecutive sentencing was that his crimes were committed during a single course of conduct without a change in the criminal objective or motivation, therefore consecutive sentences were not authorized. Defendant's *pro se* petition also claimed his 93-year sentence violated the Illinois Proportionate Penalties Clause as applied to him as an emerging adult who was 21 years old at the time of the attempt murders.

¶ 4    The trial court summarily dismissed the *pro se* petition for postconviction relief. Defendant appeals the summary dismissal of his *pro se* petition. For the following reasons, we affirm the trial court's judgment.

¶ 5                                  BACKGROUND

¶ 6      We have previously summarized in detail the facts leading to defendant's conviction and sentence when we determined that defendant's case should be remanded for a preliminary inquiry pursuant to *Krankel*. *People v. Larry Johnson*, 2020 IL App (1st) 180171-U. We will not repeat that entire history here. For purposes of our disposition of this appeal, it will suffice to say that as a result of a shooting on August 13, 2014, the State charged defendant with the attempt (first degree murder) of Tempestt Woods, Devante Wandick, and D'Mario Gatlin. At defendant's trial, Woods testified that as she approached the back porch of a residence where Wandick was sitting defendant ran in front of her and defendant shot her in the right forearm and stomach. She heard additional gunshots, then she was shot twice more. As a result of the shooting Woods was hospitalized for three weeks. Woods underwent multiple surgeries. Woods has scarring on her arms, pelvis, and back.

¶ 7      Gatlin testified that he was sitting on the back porch of Watkin's residence with Wandick and another man. Gatlin saw Woods approach the porch and saw her get shot. The shooter came to the porch steps and shot Gatlin in the back. Gatlin identified defendant as the shooter. Gatlin testified defendant shot him twice more in the leg and stomach, then Gatlin saw defendant shoot toward Wandick. Gatlin was hospitalized for one month after the shooting. At the time of trial Gatlin had three bullets in his body: one in the chest, one in the buttocks, and a fragment in a rib. Gatlin had three surgeries and had scars from his injuries.

¶ 8      Wandick testified he, Gatlin, and a third individual known as "Blue Eyes" were on the back porch. Wandick saw Woods and saw defendant shoot her. Wandick knew defendant and recognized him. When defendant approached the back porch, Wandick jumped over the banister, then ran to the front of the residence and told someone to call an ambulance. Later, Wandick

realized he was shot in the foot. Wandick identified defendant as the shooter when police arrived. Wandick received treatment in the hospital.

¶ 9    At defendant's sentencing, the trial court found, in relevant part, that defendant "committed this act, which basically you went up to a porch of people and started shooting a weapon. Did not [*sic*] cause death in this case but it surely caused severe bodily harm as I heard from Miss Tempest, Mr. Wandick and Mr. Gatlin as far as how their life has completely changed and been affected by the injuries as a result of gunshot received [*sic*] because you decided to unload a firearm on a porch of people." The court stated it had "gone through the law and cases" and determined that "the law does require the enhancements on attempt murder with a firearm in your case." The court also found based on its review of the statute and the case law that the sentences "must be consecutive. That it's mandatory. That I'm bound by that it's consecutive because the law talks to offenses, not single course of action. Because there are three separate people. So the fact that you only had one firearm and this was one course of conduct, apparently those arguments have not succeeded thus far." The court also stated that it was "bound by the guidelines so I'm going to sentence you to 93 years because that pretty much is a life sentence. Which is the minimum that I am allowed to set in this case. *** So it will be the 93 years Illinois Department of Corrections total."

¶ 10    On May 16, 2022, defendant filed his *pro se* petition for postconviction relief. The petition alleged, in pertinent part, that defendant's rights under the United States and Illinois constitutions were denied in that defendant:

"was denied his right to effective assistance of appellate counsel where appellate counsel failed to raise *** the following meritorious issues on direct appeal: *** [t]rial court erred in imposing consecutive sentences where

[defendant] was sentenced to three 31-year sentences to run consecutively which summed to a 93-year sentence, where there was no substantial change in the nature of the criminal objective and the offenses were committed as part of a single course of conduct. *** [Defendant cited several cases in support of his claim that consecutive sentencing is improper where there is no substantial change in the criminal objective.] Previous court's review of the cases in this area indicates that a finding of independent criminal motivation must be supported by the record. *** In the present case [defendant] was sentenced to consecutive sentences just like in *Miller*. And also like in *Miller*, in the present case, the record supported the finding that the shooter only had one criminal objective, *i.e.*, to kill the people attempted. Applying the ruling in *Davis*, in the present case, based off the records finding that there was no substantial change in the defendant's criminal objective, consecutive sentences cannot be imposed and the court shall modify the consecutive sentences to concurrent sentences just like in *Miller*."

¶ 11    Defendant's *pro se* petition for postconviction relief also claimed, in pertinent part, that:

"a *de facto* life sentence of 93 years in prison violated [the] state constitution's Proportionate Penalties Clause pursuant to *Miller v. Alabama ****. [Defendant noted] recent science supported by Dr. Steinberg's testimony under oath in an unrelated case stating that young adults often lag behind in their ability to make good decisions while emotionally stressed until they are 22 or 23 years old and [defendant] in the instant case was only two months into his 21st birthday

when he was arrested. *** [Defendant cited articles on] the Neuroscience of 20-

Somethings, Emerging Adults *** and Adolescent Maturity and the Brain."

Defendant said nothing more about himself.

¶ 12    The trial court issued a written order summarily dismissing the *pro se* petition as

frivolous and patently without merit. In that order, the trial court wrote, in relevant part, that

petitioner contended his appellate counsel was ineffective for failing to raise, *inter alia*, that his

three convictions were from a single course of conduct and the trial court abused its discretion by

imposing a firearm enhancement to each of the three attempt murders. The court found that "the

unraised issues ***are not reasonably probable to succeed on appeal and that counsel was not

objectively unreasonable for failing to raise these claims."

¶ 13    The trial court found that defendant claimed that appellate counsel failed to raise the issue

of his "sentences being imposed consecutively based upon the argument that these attempt

murders were committed during a single course of conduct without a change in the criminal

objective or motivation." The court noted that several of the authorities defendant cited in

support of that claim involved portions of the sentencing statute that were no longer in effect at

the time of defendant's sentencing. Nonetheless, defendant contended the applicable statute

"precluded the imposition of consecutive sentences for his three attempted murder convictions."

The court found that defendant ignored the portion of the statute that made defendant "eligible

for consecutive sentences as his single course of conduct involved the commission of a Class X

felony and the infliction of severe bodily injury of each of the victims." The court further found

that the applicable statute "mandated the imposition of consecutive sentences where '[o]ne of the

offenses for which the defendant was convicted was first degree murder or a Class X or Class 1

felony and the defendant inflicted severe bodily injury.' " The court found that defendant's

"actions were found to have caused severe bodily harm and permanent disfigurement of all three victims." The court held that defendant "has not established deficient performance or prejudice in support of this ineffective assistance claim."

¶ 14    Turning to defendant's arguments concerning the firearm enhancements, the trial court concluded that defendant argued that appellate counsel was ineffective for failing to raise the issue of "the trial court's purported abuse of discretion in imposing a firearm enhancement to each of his three attempted murder sentences where 'only one gun was used' and 'the statute does not make it clear whether or not a defendant can be sentenced to more than one enhancement ***.' "

¶ 15    The trial court wrote that defendant's focus on the fact there was only one gun was mistaken. The court wrote that "[t]hese three sentences stemmed from [defendant's] attempt to murder three separate individuals, through his personal discharge of one firearm three times, and which resulted in great bodily harm and/or permanent disfigurement of three victims. As such, the enhancements were mandatory ***." The court found that defendant "used [one] gun to shoot three separate victims with three separate shots from that one firearm and caused all three victims severe bodily harm and permanent disfigurement. Here [defendant's] convictions were based upon these three separate acts ***. Accordingly, appellate counsel was objectively reasonable for not raising this issue and it was not reasonably probable that this issue would have been successful had it been raised."

¶ 16    As for defendant's Proportionate Penalties Clause claim, the trial court found that: "In support of his own youthfulness, [defendant] submits that he was 'only two months into his 21st birthday when he was arrested.' " The court noted that "Illinois courts consider sentencing claims for young adults under the Proportionate Penalties Clause" and that " 'Young adult

defendants are not entitled to a presumption that [*Miller v. Alabama*] applied to them.' " Rather, " 'under *Harris*, a young adult defendant must plead and ultimately prove, that his or her individual characteristics require the application of *Miller*.' " In this case, the court found that:

"In support of his entitlement to the application of *Miller*, [defendant] merely alleges his age and cites generally to scientific studies regarding brain development. [Defendant] sets forth no facts, outside of his age, that allow for objective or independent corroboration—let alone any facts that set forth that his individual characteristics require the application of *Miller*. Accordingly, this court finds [defendant's] Proportionate Penalties claim frivolous and patently without merit."

¶ 17    On August 3, 2022, the trial court entered its written order summarily dismissing defendant's petition for postconvicton relief. This appeal followed.

¶ 18                                ANALYSIS

¶ 19    This is an appeal from the summary dismissal of a *pro se* petition for postconvicton relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-7 (West 2022)). The procedures on petitions under the Act are well-established and well known. The part of that process relevant here is the one that requires that:

"Once a petitioner files a petition under the Act, the trial court must first, independently and without considering any argument by the State, decide whether the petition is 'frivolous or is patently without merit.' [Citation.] A postconviction petition is frivolous or patently without merit only if it 'has no arguable basis either in law or in fact.' [Citations.] A petition lacking an arguable basis in law or

fact is one 'based on an indisputably meritless legal theory or a fanciful factual allegation.' [Citation.]

To survive dismissal at this initial stage, the postconviction petition 'need only present the gist of a constitutional claim,' which is a low threshold that requires the petition to contain only a limited amount of detail. [Citation.] Additionally, a petition need not make legal arguments or cite legal authority. [Citation.] All well-pleaded facts must be taken as true unless 'positively rebutted' by the trial record. [Citation.] *** Our supreme court has instructed that *pro se* postconviction petitions should be viewed 'with a lenient eye, allowing borderline cases to proceed to stage two.' [Citation.]" *Id*. ¶¶ 41-42.

¶ 20 This court reviews the summary dismissal of a *pro se* petition for postconviction relief *de novo*. *People v. Myers*, 2023 IL App (1st) 210642, ¶ 41 ("We review the summary dismissal of a postconviction petition *de novo.*").

¶ 21 Defendant's petition raises a claim of ineffective assistance of appellate counsel in defendant's direct appeal and a violation of the Proportionate Penalties Clause. Turning first to defendant's claim of ineffective assistance of appellate counsel on direct appeal, the standards for such a claim are, again, well-known and well established.

"A claim of ineffective assistance of counsel on appeal is cognizable under the Post-Conviction Act. [Citation.] Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *** Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. [Citation.] 'Claims of ineffective assistance of

appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel.' [Citation.] At the first stage of proceedings, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced. [Citation.] Unless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it on direct appeal. [Citation.] Further, it is essential that a postconviction claim of ineffective assistance of appellate counsel set forth an error of constitutional dimension that occurred during the trial, which counsel failed to raise on direct appeal. [Citation.]" *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 32.

¶ 22     Defendant's *pro se* petition challenged defendant's consecutive sentencing but on the ground there was no substantial change in the nature of the criminal objective and the offenses were committed as part of a single course of conduct. Now, for the first time on appeal, defendant claims that appellate counsel's performance was ineffective because appellate counsel failed to challenge on direct appeal the trial court's imposition of consecutive sentences on the ground the trial court "wrongly equated a finding of great bodily harm or permanent disfigurement for the purpose of the firearm enhancement in the attempt murder statute, with the phrase 'severe bodily injury' for the purposes of mandatory consecutive sentencing."

¶ 23     Section 5/8-4(c)(1)(D) of the Criminal Code of 2012 (Code), the attempt statute, states: "an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused *great bodily harm, permanent disability, permanent disfigurement*, or death to another person is a Class X felony for which 25 years or up to a term

of natural life shall be added to the term of imprisonment imposed by the court." (Emphasis added.) 720 ILCS 5/8-4(c)(1)(D) (West 2022); and section 5-8-4(d)(1) of the Code of Criminal Procedure, the consecutive sentencing statute, provides that: "[t]he court shall impose consecutive sentences in each of the following circumstances: (1) One of the offenses for which the defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted *severe bodily injury*." (Emphasis added.) 730 ILCS 5/5-8-4(d)(1) (West 2022).

¶ 24     The State argues defendant forfeited the ineffectiveness claim raised on appeal by failing to allege it in his petition, and it may not be reviewed on appeal. Section 122-3 of the Act states that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2022). Our supreme court has emphasized that the appellate court has no authority to address issues not raised in a postconviction petition, including issues involving fundamental fairness:

> "Our detailed discussion of this issue is intended to stress that our appellate court is not free, as this court is under its supervisory authority, to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition." *People v Jones* 213 Ill. 2d 498, 508 (2004).

¶ 25     Defendant responds that under the rules requiring a liberal construction of *pro se* postconviction petitions, specifically pursuant to our supreme court's decision in *People v. Hodges*, 234 Ill. 2d 1, 21 (2009), and our sister District's decision in *People v. Mescall*, 403 Ill. App. 3d 956, 962 (2020), this court should similarly find that the *pro se* petition sufficiently raised the consecutive sentencing issue defendant argues on appeal. For the following reasons we

disagree and find that our liberal construction rules cannot save defendant's claims on appeal from forfeiture.

¶ 26    Our rules surrounding the issue of liberal construction of *pro se* postconviction petitions are clear.

> "It is well established that 'claims not raised in a petition cannot be argued for the first time on appeal.' [Citation.] However, as stated above, our supreme court expressed concern that *pro se* petitions should be given a liberal construction and should be reviewed ' "with a lenient eye, allowing borderline cases to proceed." ' [Citations.] 'While in a given case the *pro se* defendant may be aware of all the facts pertaining to his claim, he will, in all likelihood, be unaware of the precise legal basis for his claim or all the legal elements of that claim.' [Citation.] It is for this reason that a *pro se* defendant is required to present only the 'gist' of a constitutional claim, which is 'something less than a completely pled or fully stated claim.' [Citation.] The question on appeal from the dismissal of a postconviction petition is whether the allegations in the petition, when liberally construed and taken as true, are sufficient to invoke relief under the Act. [Citations.]" *Myers*, 2023 IL App (1st) 210642, ¶ 45.

¶ 27    In *Hodges*, our supreme court rejected the State's argument the defendant had forfeited a postconviction claim of ineffective assistance of trial counsel for failing to call certain witnesses because the witnesses' testimony would have supported a finding of second degree murder or "imperfect self-defense." The State argued the "defendant, who was acting *pro se*, 'chose' to focus only on self-defense and not on second degree murder as well." The court found that the petition for postconviction relief "did not expressly allege that this same testimony would have

supported 'unreasonable belief' second degree murder." *Hodges*, 234 Ill. 2d at 21. Our supreme court stated that the State's construction of the petition was "inconsistent with the requirement that a *pro se* petition be given a liberal construction." *Id.* Instead, our supreme court found that "whether defendant's *pro se* petition, which focused on self-defense, could be said to have included allegations regarding 'unreasonable belief' second degree murder—*i.e.,* imperfect self-defense—is at minimum the type of 'borderline' question which, under a liberal construction, should be answered in defendant's favor." *Id.*

¶ 28    Defendant advocates for a similar result. He argues that since he alleged a claim of ineffectiveness for failing to challenge the imposition of consecutive sentences his claim necessarily encompasses whether there was a finding of severe bodily injury. We are not persuaded a similar result is warranted. In *Hodges*, the defendant raised second degree murder at trial and the postconviction petition did raise the issue of "self-defense." Our supreme court focused on the question of whether the claims in the petition focused on "self-defense" "could be said to have included allegations regarding 'unreasonable belief' second degree murder—*i.e.*, imperfect self-defense." *Hodges*, 234 Ill. 2d at 21. The only difference in the claim that was not specifically stated in the petition was whether the self-defense was "perfect" or "imperfect." See *Hodges*, 234 Ill. 2d at 20-21.

¶ 29    The decision in *Mescall* is similarly distinguishable. In *Mescall*, 403 Ill. App. 3d at 962, the State argued the petition claimed ineffective assistance of trial and appellate counsel based on the failure to challenge a consecutive sentence only on the ground the trial court "failed to articulate how [the defendant's] acts constituted a single course of conduct" but not on the ground the trial court mistakenly determined that "consecutive sentences were mandatory." *Id.* The *Mescall* court found that liberally construed the postconviction petition encompassed both

claims. See *id*. There, the petition raised the issue of the applicability of the consecutive sentencing statute the trial court applied in toto—that is, the petition alleged the defendant "could have been sentenced under an earlier more lenient law." *Id*. at 962. The petition went on to specifically allege " 'the trial judge could have only imposed mandatory consecutive sentences only if he found that the charged acts occurred as part of a single course of conduct.' " *Id*.

¶ 30    The court found the petition sufficiently raised the issue that the trial court erred in imposing mandatory consecutive sentences. *Id*. In that case, the State argued that the amended version of the sentencing statute applied, but the *Mescall* court found the "amended statute [did] not apply to [the] defendant's case." *Id*. at 964. Therefore, defendant was entitled to be sentenced under an earlier, more lenient law. The court determined that "at the time of defendant's sentencing, consecutive sentences under the applicable statute were mandatory *only if the acts were committed in a single course of conduct*." (Emphasis in original.) *Id*. Ultimately, the *Mescall* court concluded that the trial court believed consecutive sentences were mandated (under the amended statute), but that (under the correct statute):

> "Given the language of the information, the evidence at trial, and the general verdict of the jury, defendant presented an arguable basis for his claim that any finding by the trial court that the acts were committed during a single course of conduct for purposes of imposing mandatory consecutive sentences under the 1996 version of section 5–8–4(a) would have been erroneous." *Mescall*, 403 Ill. App. 3d at 966.

¶ 31    In this case, the difference in the claim that was not raised in the petition involves completely different aspects of the sentencing statute and completely different elements of proof. Unlike "self-defense" and "imperfect self-defense" in the cited case, the nature of the proof here

is whether there was a single course of conduct (as alleged in the petition) and whether there was severe bodily injury (as alleged on appeal). These are wholly distinct issues for the trial court to decide. See *People v. Williams*, 335 Ill. App. 3d 596, 599-602 (2002) (discussing intricacies of the "severe bodily injury" determination for purposes of the consecutive sentencing statute). Further, the petition in this case did not raise the claim argued on appeal generally, like the petition in *Mescall*. In both of the primary cases defendant relies on, the allegations in the petition bore some relationship to the arguments raised on appeal. In this case we can find no relationship whatsoever.

¶ 32     Recently, in *Myers*, this court found that the allegations in the petition adequately alleged the claims asserted on appeal. *Myers*, 2023 IL App (1st) 210642 ¶ 46. There, the petition alleged counsel was ineffective in failing to exclude the testimony of two witnesses but on appeal, the arguments focused on excluding a detective's testimony based on those two witnesses' testimonies. *Id*. The court found that the petition alleged a claim of ineffective assistance based on the failure to exclude the evidence that was the subject of all of the witnesses' testimony. See *id*. ¶¶ 47-48. In *Myers*, the testimony sought to be excluded between the witnesses and the detective all went to the same facts and claim. *Id*. ¶¶ 47-50. This case is different. The allegations in the petition and the claims on appeal do not involve the same facts and relate to wholly separate claims.

¶ 33     The court has written that:

>     "[A] *pro se* petitioner need allege only enough facts to make out a claim
> that is arguably constitutional for purposes of invoking the Act. [Citations.]
> 'However low the threshold, the petition must "clearly set forth" the respects in
> which the petitioner's constitutional rights were violated. (Internal quotation

marks omitted.)' [Citations.] This means that the pleading must bear some relationship to the issue raised on appeal. [Citation.] Liberal construction does not mean that we distort reality. [Citation.]" *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48 (citing, *inter alia*, *Hodges*, 234 Ill. 2d at 9).

¶ 34    In this case, the petition bears no relationship to the issue raised on appeal. We reject defendant's argument that his claim should proceed because the trial court in this case "addressed the propriety of consecutive sentences vis-à-vis the 'severe bodily injury' provision of the statute." The portion of the trial court's written order on which defendant relies for that claim is titled "Single Course of Conduct' and the trial court only discussed that defendant was eligible for consecutive sentencing based on his single course of conduct. Consistent with the statute that defendant asserted (that was not applicable at the time of sentencing), the court further noted that the single course of conduct involved the infliction of severe bodily injury. The court concluded that "under the version of the statute that was in place at the time of his sentencing" defendant was eligible for consecutive sentencing based on the offense "and the defendant inflicted severe bodily injury." But the trial court did not discuss the meaning of the phrase "severe bodily injury" or state any facts on which it found severe bodily injury—the court only recited the language of the statute—because defendant did not ask the court to revisit those issues in his petition; and therein lies the best reason for finding forfeiture in this case. "The underlying purpose of the forfeiture rule is to '*preserve finite judicial resources* by creating an incentive for litigants to *bring to trial courts' attention alleged errors,* thereby *giving trial courts an opportunity to correct their mistakes*' (Emphasis added.) [Citation.]" *People v. Primm*, 319 Ill. App. 3d 411, 423 (2000).

¶ 35    As previously noted, "[i]t is well established that 'claims not raised in a petition cannot be argued for the first time on appeal.' " *Myers*, 2023 IL App (1st) 210642, ¶ 45 (citing *People v. Jones*, 213 Ill. 2d 498, 505-06 (2004)). Defendant did not raise a claim that the trial court conflated "great bodily harm" with "severe bodily injury" that can be saved by a liberal construction of his postconviction petition. We find defendant has forfeited this issue on appeal.

¶ 36    Forfeiture aside, defendant's claim that consecutive sentences were not authorized is completely rebutted by the record. The record shows the victims were severely wounded and all three suffered disfigurement. The record shows victims Woods and Gatlin were shot multiple times, their wounds required multiple surgeries, and they spent weeks in the hospital. They displayed their surgical scars in court. Victim Wandick was shot in the foot. He testified he suffered broken bones and ligament damage which prevent him from standing for periods of time. He testified he has a bullet hole in his foot and a bone protruding from his foot as a result of the shooting. All three victims received scars and a permanent alteration of their physical appearance. Therefore, the consecutive sentences were required.

¶ 37    We turn next to defendant's claim the imposition of a *de facto* life sentence in this case violates the Proportionate Penalties Clause of the Illinois Constitution as applied to him. Initially, we note this claim is not forfeited for the reason defendant did not raise it in his direct appeal. The courts have directed young adults that Proportionate Penalties Clause claims can and should be raised in postconviction proceedings where an appropriate record can be developed. See *People v. Herring*, 2022 IL App (1st) 210355, ¶ 36 (discussing forfeiture of Proportionate Penalties Clause claims). See also *People v. Ford*, 2021 IL App (5th) 170259, ¶ 25 ("An as-applied challenge to a defendant's sentence requires a showing that his sentence is unconstitutional as it applies to the specific facts and circumstances of the defendant's case.

[Citation.] For purposes of appellate review, it is paramount that the record is sufficiently developed because all as-applied challenges are dependent on the specific facts and circumstances of the individual raising the challenge.").

¶ 38 In this context, we also review the summary dismissal of a postconviction petition *de novo. Herring*, 2022 IL App (1st) 210355, ¶ 23. Under the Act, young adult offenders may challenge a *de facto* life sentence—and there is no dispute defendant received a *de facto* life sentence—under the Proportionate Penalties Clause of the Illinois Constitution. *Id*. ¶ 27 (citing *People v. Harris*, 2018 IL 121932, ¶¶ 46, 48).

¶ 39 As already pointed out above, " '[a] petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact.' [Citations.] That is, the petition is based on a legal theory 'completely contradicted by the record' or on factual allegations determined as 'fantastic or delusional.' [Citation.]" *Id*. ¶ 22.

¶ 40 "Our supreme court has recognized that young adults may raise as-applied challenges to life sentences based on the evolving science on juvenile maturity and brain development under the proportionate penalties clause." *Id*. ¶ 27. "At the first stage, a defendant 'is not trying to prove the merits of [an] as-applied proportionate penalties claim' but 'need only state the gist of a constitutional violation, which may then be fleshed out in further proceedings.' [Citation.]" *Id*. (citing *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 30). Nonetheless, the defendant bears the burden to allege "facts showing that his particular circumstances fall under *Miller* and that a sentence imposed on an adult pursuant to the relevant statutes is nonetheless so disproportionate to the offense that it shocks the moral sense of the community." *People v. Thomas*, 2022 IL App (1st) 200164, ¶ 52. That is, the defendant must "make a connection between the applicable science and his own characteristics" *Id*. ¶ 49. A defendant does this by alleging " 'facts that can

be corroborated, are objective in nature, and bear directly on the Supreme Court's observation in *Miller* that a hallmark of youth is the lack of a fully formed character—traits that are not fixed and a corresponding capacity for meaningful rehabilitation,' [Citation.]" *Id*. Although "a defendant needs to be specific enough [in their factual allegations] to show their claim can be substantiated at the later stages" of postconviction proceedings, it is clear that a conclusory assertion that *Miller* should apply to the defendant as a young adult is insufficient to survive first stage review. *Herring*, 2022 IL App (1st) 210355, ¶¶ 29-31, 50. See also *Thomas*, 2022 IL App (1st) 200164, ¶¶ 51-54.

¶ 41    Defendant argues the trial court erred in summarily dismissing his *pro se* claim that his sentence violates the Proportionate Penalties Clause as applied to him because the trial court "used an inappropriately high standard in evaluating [defendant's] *pro se*, first stage claim." Defendant argues the claim has an arguable basis in law, and this court has recognized that emerging adults can raise Proportionate Penalties Clause claims and argue that the protections provided by *Miller* should apply to them.

¶ 42    In this case, the trial court summarily dismissed the claim based on finding defendant did not allege sufficient facts to allow for "objective or independent corroboration that his individual characteristics require the application of *Miller*." As to the facts, defendant argues that he alleged enough facts to meet the "low pleading threshold" at the first stage. Defendant argues that his allegations—consisting of his age—"coupled with the record establish that his claim *** has an arguable factual basis." The portions of the record on which defendant relies are the PSI and certain inferences about defendant's upbringing, and the nature and alleged motive for the offense, which defendant asserts itself "shows a level of impulsivity, impetuosity, and recklessness that factor into the diminished culpability for youthful offenders." Defendant also

blames the lack of factual development on trial and appellate counsel's failure to raise the Proportionate Penalties Clause claim and argues that as "a *pro se* and incarcerated litigant, [defendant] could not be aware of exactly how much factual development he needed."

¶ 43     In this case, defendant failed to reach the low pleading threshold required at the first stage of postconviction proceedings. *Herring*, 2022 IL App (1st) 210355, ¶¶ 29-31, 50. See also *Thomas*, 2022 IL App (1st) 200164, ¶¶ 51-54. Defendant said nothing about himself, other than his age. Defendant did not allege that his mental development was more like that of a juvenile at the time of the offense, or that he has impulse control issues. *Cf. Herring*, 2022 IL App (1st) 210355, ¶ 28. Defendant did not allege specific information about his own brain development or any facts specific to himself to link his claims to studies surrounding young adult brain development. *Id.* ¶¶ 28-29.

¶ 44     On appeal, defendant argues we should infer much from the facts of the offense and the PSI. However, this court, pursuant to *Harris*, has found that "information from the PSI is 'basic.' It 'does not contain evidence about how the evolving science on juvenile maturity and brain development *** applies to defendant's specific facts and circumstances.' " *Thomas*, 2022 IL App (1st) 200164, ¶ 52 (quoting *Harris*, 2018 IL 121932, ¶ 46). We also find the trial record is insufficient to support defendant's claims. Defendant's alleged motive for the shooting— retaliation for disrespecting a friend—his posing for photos possessing guns, and the brazenness of the offense are equally compatible with a criminal mind as they may be with youthful impetuousness. Defendant cited no facts to link his offense to any characteristics of youth in himself at the time of the offense, to studies surrounding young adult brain development, or any relevant *Miller* factors. *Cf. Herring*, 2022 IL App (1st) 210355, ¶ 28 ("These allegations are specific to Herring and linked to his claims about studies surrounding young adult brain

development. In this way, Herring "sufficiently alleged that [he] could establish the existence of facts personal to him that warranted consideration of the *Miller* factors in fashioning an appropriate sentence."). The trial court only found that defendant's conduct was "unacceptable" and "had to be punished." The record does not contain an express finding of impulsiveness or immaturity. *Cf. Thomas*, 2022 IL 200164, ¶ 53 (trial court in earlier case had made remarks that were "powerful support for the [defendant's] claim"). Finally, defendant cites no authority for his suggestion that his pleading deficiency should be excused because his trial counsel did not raise the issue at sentencing nor did appellate counsel raise it on appeal.

¶ 45    Defendant did nothing more than make a bare allegation of youth and cite to scientific studies. Under the law as it stands, this is not enough to raise even an arguable claim of a constitutional violation. See *Herring*, 2022 IL App (1st) 210355, ¶ 29 (citing *People v. Howard*, 2021 IL App (2d) 190695, ¶ 46). We find the trial court did not err in summarily dismissing defendant's petition. See *Thomas*, 2022 IL App (1st) 200164, ¶ 54.

¶ 46                                   CONCLUSION

¶ 47    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 48    Affirmed.